CHARLES D. GLEASON, APPELLANT AND CROSS-APPELLEE, V.
BETTY L. GLEASON, APPELLEE AND CROSS-APPELLANT.

357 N.W.2d 465

Filed November 9, 1984.   No. 83-654.

Frank E. Piccolo of Murphy, Pederson & Piccolo, for appellant.

George E. Clough of Clough Law Office, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

630

PER CURIAM.

Charles D. Gleason (Charles) appeals the judgment of the district court for Lincoln County, namely, alimony claimed to be excessive. Betty L. Gleason (Betty) cross-appeals, claiming that the periodic payments ordered by the district court are not alimony and are exempt from modification. In addition to alimony, the district court ordered Charles to pay certain debts of the parties and to pay child support monthly in the amount of $300 for the teenage daughter of the parties, but on appeal the parties do not contest the debts to be paid by Charles or the child support. We reverse the judgment of the district court concerning alimony.

Charles and Betty were married in December 1953. Charles is 49 years of age, Betty is 47, and both are in good health. Since 1967, Betty has been self-employed as a licensed, practicing beautician and owner of "Betty's Hi-Way Beauty Salon." Charles is an executive whose primary duties consist of management and operation of three corporations, Gleason Truck Sales & Service, Inc.; Big Diesel Warehouse, Inc.; and Gleason Enterprises, Inc. The bulk of the marital estate is comprised of the Gleasons' interest in the three corporations. Charles owns 75 percent of the stock of the corporations, while Betty owns 25 percent. The primary purpose of having three corporations is limitation of potential liability. Gleason Enterprises, Inc., owns the real estate on which the other two corporations operate. Each corporation is operated as a separate entity and files a small business corporation income tax return. Gains or losses from the various small business corporations are reflected on the individual income tax returns of the shareholders.

Recently, revenues of the three corporations have fallen off dramatically. Corporate tax returns for the past 3 years show a combined overall profit of $1,950 in 1980 and $7,560 in 1981, and a net loss of $40,085 in 1982, the year in which the dissolution action was filed.

Net profits of the corporations were distributed to the shareholders. Charles' income is derived from the three corporations, which pay Charles an annual combined salary of $1,300. Living expenses of the family were paid from a "901

account," which enabled Charles and Betty to withdraw money from the corporations as advances against dividends. In 1982, the only year for which complete records are available, approximately $27,000 was withdrawn in this manner.

Although Betty is and has been self-employed as a beautician, there is no information in the record about Betty's income as a beautician. At times Betty has employed as many as four beauticians in her salon.

By the decree, Betty received the beauty shop, valued at $34,000, and the shop contents. Also, Betty received the family home and approximately 14 acres, free and clear, valued at $109,000 and located near North Platte. By the decree of dissolution, Charles is required to satisfy the real estate mortgage on the family home, in the amount of $8,895.37, with monthly installments of $221.42. Betty's monthly utilities for the family home are expected to be $280. Monthly maintenance or repair of the residence is anticipated at $100. As a result of the property division, Charles received total control over the corporations and all corporate assets. Except for a debt of $530 pertaining to the beauty salon, the decree charged Charles with payment of all debts of the parties. Such debts are $278,000.

The decree of dissolution also provided:

> [Betty] should have and recover from [Charles] as alimony, the sum of $96,800.00 at the rate of $800.00 per month for a period of 121 months, commencing forthwith and hereafter due and payable by [Charles] to [Betty] through the Clerk of the District Court of Lincoln County, Nebraska, on the 24th day of each month for a total of 121 months.

Charles claims the amount of alimony is excessive. In her cross-appeal Betty contends that the periodic payments ordered were an adjustment of property, not alimony, and should be exempt from modification or termination.

In appeals concerning dissolution of marriage, the Supreme Court is required to try the case de novo on the record and reach independent conclusions on the issues presented by the appeal without reference to the conclusions or judgment of the district court. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Campbell v. Campbell*, 202 Neb. 575, 276 N.W.2d 220 (1979).

Neb. Rev. Stat. § 42-365 (Cum. Supp. 1982) provides:

When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. Reasonable security for payment may be required by the court. Unless amounts have accrued prior to the date of service of process on a petition to modify, orders for alimony may be modified or revoked for good cause shown, but when alimony is not allowed in the original decree dissolving a marriage, such decree may not be modified to award alimony. Except as otherwise agreed by the parties in writing or by order of the court, alimony orders shall terminate upon the death of either party or the remarriage of the recipient.

While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

The determination of what will constitute proper alimony has been established by a long line of Nebraska cases. In *Magruder v. Magruder*, 190 Neb. 573, 576-77, 209 N.W.2d 585, 587 (1973), we held:

In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criteria under the statute as well as under the former decisions of this court is one of reasonableness. . . .

[Citations omitted.] The determination of whether it is reasonable to award alimony and if so how much takes into consideration all the circumstances of the parties, as well as the duration of the marriage and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children of the parties in the supported party's custody.

Tax returns of the Gleason corporations for the fiscal year ending January 31, 1982, indicate a net loss of $40,085. Of that loss, $17,021 is directly attributable to the depreciation of assets owned by the corporations. The removal of this noncash loss figure from the overall loss shown by the corporations reveals that the corporations nevertheless suffered a $23,064 loss for 1982. Although approximately $27,000 has been withdrawn from the corporations as advances against dividends and used by the parties to meet household or living expenses, neither party treats such advances as income. Little is offered to the court beyond corporate tax returns in clarifying any profit or loss from any Gleason corporation.

Determining what is reasonable alimony under given circumstances is never an easy task. The standard of reasonableness by its very nature defies clear and specific quantification inasmuch as the determination of reasonableness is directly tied to the virtually unique circumstances of each case. In *Altschuler v. Coburn*, 38 Neb. 881, 890, 57 N.W. 836, 838 (1894), we noted that an attempt to give a specific meaning to the word *reasonable* is " 'trying to count what is not number, and measure what is not space.' " There is no mathematical formula by which an award of alimony can be precisely determined. The amount of appropriate alimony is determined by the facts of each case, and the court will consider all pertinent facts in reaching an award that is just and equitable. *Cole v. Cole*, 208 Neb. 562, 304 N.W.2d 398 (1981).

Charles claims the alimony is excessive because the alimony annually exceeds his income. In *Jenks v. Jenks*, 200 Neb. 298, 263 N.W.2d 469 (1978), we recognized that the earning capacity of *both parties* in a dissolution of marriage is a proper inquiry and consideration by the court. Alimony in excess of one's

earning capacity is an abuse of discretion. The relevant inquiry becomes whether such an award is present here.

We are confronted with a situation where Charles, in effect, has been awarded patently unprofitable businesses. While the condition of a business is an important consideration in determining the propriety of alimony to be paid, the condition of a spouse's business is not the sole factor in determining proper alimony. Rather, the earning capacity of a spouse operating a business is an element which is to be considered in determining alimony. *Kosnopfl v. Kosnopfl*, 206 Neb. 524, 293 N.W.2d 854 (1980); § 42-365. The actual earning capacity or ability of a spouse to engage in gainful employment is frequently more important than the profitability of a spouse's business in resolving the question of alimony. Here, it is undisputed that Charles has acquired a degree of expertise in his present occupation. It is reasonable, therefore, that Charles would have an earning capacity or ability to earn a wage quite apart from his actually or personally managing the corporations involved in the dissolution proceedings. However, in the interests of equity, we must also take into consideration that Betty is a licensed beautician, in good health, and has been awarded her salon. Consequently, we are constrained to take into account Betty's earning capacity in the same manner as was done regarding Charles' earning capacity, notwithstanding a complete absence of information regarding Betty's income from her beauty salon. Further, the record discloses that Betty's beautician business does not interfere with rearing the Gleasons' teenage daughter.

We are of the opinion that, taking into consideration that Betty received the house free and clear and her needs in maintaining the house, $800 per month as alimony is clearly in excess of what is a reasonable amount under the circumstances, especially in view of the earning capacity of each party. We believe that alimony in the amount of $400 per month would be reasonable under the circumstances. For this reason we modify the alimony to be paid by Charles to Betty so that Charles is required to pay alimony in the sum of $400 per month, provided such alimony shall terminate on the death of either party or on Betty's remarriage.

We cannot accept Betty's contention that the property division ordered by the court is unfair and inadequate. If we accept the values assigned by the parties to the respective assets they received, Betty received $143,000 and Charles received $447,000, offset by debts of $278,000 which he is required to assume under the decree. Therefore, the net value of Charles' assets is $169,000. There was evidence presented by an appraiser who established the value of the real estate owned by Gleason Enterprises, Inc., at $322,000, which is $72,000 in excess of the $250,000 value asserted by Charles. Adjusting values in the light of the appraiser's testimony, the net value of the assets received by Charles is $241,000. Under this formulation it is apparent that Charles receives approximately 63 percent of the marital property, while Betty receives 37 percent. These figures are within the guidelines approved in *Martin v. Martin*, 215 Neb. 508, 339 N.W.2d 754 (1983), where we held that, generally, in proceedings for the dissolution of a marriage, awards of property to a spouse from the marital estate vary from one-third to one-half of the value of the property involved, depending on the facts and circumstances of the particular case.

Further, we cannot accept Betty's claim that the periodic payments ordered by the district court and designated as "alimony" were in fact a property adjustment for distribution of marital property. We believe that the amount to be paid by Charles was correctly designated as "alimony," a means to provide continued maintenance or support for Betty, especially since Betty has apparently had little, if any, income from her beauty salon, as reflected by the record before us. We believe that if the trial court had intended the periodic payments as part of a property adjustment and distribution, the district court would have expressed itself accordingly and not employed the term "alimony" in reference to the periodic payments. Betty's attempts to characterize the payments as a property division or adjustment of property interests are without sound basis and are not supported by the record. Because we have directed that Charles pay alimony, and, further, because we have held that the division of property ordered by the district court is proper, Betty's contention and characterization of the periodic

payments are without merit.

Consequently, as previously indicated in this opinion, we modify the district court's order regarding alimony to be paid by Charles, namely, Charles shall pay Betty alimony in the amount of $400 per month, provided such alimony shall terminate on the death of either party or on Betty's remarriage. In all other respects the district court's judgment is affirmed. We remand this matter to the district court for modification of the judgment regarding alimony consistent with this opinion.

This court awards to Betty's attorney the sum of $750 as an attorney fee for services regarding the appeal.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED WITH DIRECTIONS.

CAPORALE, J., dissenting.

I dissent. The record as presented to us demonstrates not only that the alimony awarded by the district court to Mrs. Gleason is excessive but that there is no basis for awarding any alimony to her.

The record is silent on the question of Mrs. Gleason's earnings. *Essex v. Essex*, 195 Neb. 385, 238 N.W.2d 235 (1976), states that support is one of the primary reasons for awarding alimony and holds that it is not error to deny alimony in the absence of a showing of need. How can Mrs. Gleason's need for alimony be determined in the absence of proof of that fact? Did Mrs. Gleason deliberately not prove her earnings because she would thereby establish a lack of need?

Whatever the reasons for the state of the record and whatever the answers to the foregoing questions, we cannot "review de novo on the record" what the record does not contain.

Moreover, how on earth can Mrs. Gleason be entitled to an attorney fee in this court for losing half of the alimony she had before she was brought here?

I would affirm in part and in part reverse with the direction that the judgment with respect to alimony be vacated and no alimony be awarded.

KRIVOSHA, C.J., joins in this dissent.