CLEO D. EARL, APPELLANT AND CROSS-APPELLEE, V. MAX A. EARL, APPELLEE AND CROSS-APPELLANT.
379 N.W.2d 261

Filed January 10, 1986.   No. 84-598.

E. Scott Dosek, for appellant.

Russell S. Daub of Daub, Swanson & Stickman, for appellee.

BOSLAUGH, CAPORALE, and GRANT, JJ., and WOLF, D.J., and COLWELL, D.J., Retired.

PER CURIAM.

Cleo D. Earl, appellant and cross-appellee, filed a petition for dissolution of her marriage to Max A. Earl, appellee and cross-appellant. Following trial on April 27, 1984, a decree of dissolution was entered on June 5, 1984. The decree included the following property distribution, with the values determined by the court:

| Petitioner/Wife | | Respondent/Husband | |
| --- | --- | --- | --- |
| Family Residence | $ 70,000 | Mr. Clutch | $ 75,000 |
| Household Goods | 15,000 | Keystone Insurance | 4,000 |
| Impala Automobile | 1,000 | Accounts Receivable | |
| | | to Keystone | 20,000 |
| Savings Account | 19,000 | Life Insurance | 5,000 |
| IRA | 4,600 | 1977 Piper Airplane | 14,000 |
| Property Settlement | 75,000 | IRA | 4,600 |
| Total | $184,600 | Lien Companies | 125,000 |
| | | | $247,600 |
| | | Less Debts | − 34,000 |
| | | Total | $213,600 |

The decree further ordered respondent to "pay for the support and maintenance of the Petitioner the sum of $1,500.00 per month for a period of 121 months, commencing on the first day of June, 1984 . . .; that said payments for support and maintenance shall not be terminable upon the death or remarriage of Petitioner . . . ." The respondent was also ordered to obtain and maintain life insurance in a face amount sufficient to secure payment of the property settlement and alimony awards.

Both parties filed motions for new trial and both were overruled. Both parties timely appealed to this court. Appellant, Cleo, assigns as errors the division of property in that the Lien companies were valued at only $125,000, in that only $75,000 was awarded to her, and in that it was error not to award the Lien companies to Cleo. Appellee, Max, assigns as error the excessiveness of the alimony award.

The parties were married May 24, 1949. Neither party brought substantial assets to the marriage. Seven children were born to the marriage, all of whom were of legal age at the time of the dissolution proceedings. Cleo was 56 and Max was 58 at the time of the trial.

Cleo was employed for the first 8 months after their marriage. Following that job, Cleo took on the responsibilities of caring for the parties' children. Cleo had attained sophomore status in college at the time of the trial, but had no declared major and no job prospects. Although never

employed by the two family businesses, the Lien companies, Cleo held 50 percent of the stock in the two businesses.

The parties purchased a house in 1955, and the family lived there from that time. Cleo remained in the home at the time of trial. While there is no encumbrance on the house, it is in need of some repairs. The home was titled in the name of Cleo only at the time of the proceedings. When the house was purchased, it apparently was placed in both Max's and Cleo's names. At a later date, when a car dealership operated by Max filed bankruptcy, the house was placed in Cleo's name alone to protect it during the bankruptcy proceedings. Cleo placed a value of approximately $60,000 on the house. Her expert witness, a real estate appraiser and broker, appraised the value of the house and land at $64,800. Max placed a value of $80,000 on the home.

Cleo inherited $17,500 in January of 1976. She invested the money by loaning it to the parties' children, at interest. At the time of trial Cleo testified that she controlled various accounts in the amount of $56,500, and that amount consisted of both marital and nonmarital property: $17,000 in marital property and $39,500 nonmarital property resulting from the $17,500 Cleo inherited and the interest thereon. During the marriage, Max inherited $5,064.96.

Both parties have IRAs, apparently in equal amounts of approximately $4,600. There was disagreement in the testimony regarding the value of the household goods. As well, there were differing opinions regarding the value of the family businesses known as the Lien companies. A witness hired by Cleo valued the businesses at $288,953. Max valued the companies at $150,000 combined.

Max received a high school education. Max had a $5,000 cash value in life insurance policies. Out of marital assets, Max invested $75,743.84 in a business known as Mr. Clutch. This business was operated with his brother. Max's testimony indicates that the status of this investment is uncertain. Max testified that he made a "risk" investment in Mr. Clutch International (Mr. Clutch) by giving his brother $75,743.84. The investment had not yielded any return to Max at the time of the proceedings. Mr. Clutch is an automobile transmission

repair business. Max testified that the business venture was seeking "to be the holding company to receive royalties from [the] sale of franchies [sic] for Mr. Clutch." The money invested in Mr. Clutch was from marital assets, except for $14,000 which Max borrowed.

Max operated a car dealership until it went through bankruptcy. Max is also a licensed insurance agent, active in Keystone Insurance. Keystone was started by Max when he split with another insurance agency in which he was a partner. The income has recently decreased. Max testified about the business and its future that Keystone "will more than likely have no value, because the insurance company will not continue with the minimal amount of premium that I have, they can't afford it." Keystone, a proprietorship, loaned money to the Lien companies.

Lien Chemical Company of Omaha, Inc. (Lien Chemical), was started in 1965 when Max assumed a $14,000 debt, but Max did not begin to actively operate the business until 1969. Lien Termite and Pest Control, Inc. (Lien Pest Control), was begun by Max in approximately 1974. Only the chemical company is a franchise. The companies are separate corporations with separate books, but they file a combined tax return. Lien Chemical is a restroom sanitation service, catering to commercial establishments. Lien Pest Control checks for termites and other pests in residences and commercial businesses. Three of the parties' children are full-time employees of the businesses. While Lien Chemical has recently suffered some economic difficulties and had to pull out of one location and drastically cut back in three others, Lien Pest Control has experienced an increase, so that there has been some overall consistency.

While Max obtains some income from Keystone Insurance, the primary source of income is from the Lien companies. The record indicates that Max's income from the Lien companies never exceeded approximately $35,000 and ran anywhere from approximately $15,000 to around $35,000 in the most recent years.

We held in *Erstrom v. Erstrom*, 220 Neb. 303, 369 N.W.2d 637 (1985), that the division of property and the awarding of

attorney fees in marriage dissolution cases are matters initially entrusted to the sound discretion of the trial judge, which matters, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. See, also, *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984). Upon a de novo review of the record in this case, we find no abuse of discretion in the division of property.

Appellant, Cleo, asserts that it was error not to award her the two family businesses known as the Lien companies. The record clearly shows that the trial judge did not err in his determination in this matter. The record indicates that Cleo had no knowledge of the businesses and little or no qualification to manage them, while Max managed them in virtually every detail and had the practical qualifications to manage them.

Cleo also assigns as error the court's valuation of the Lien companies at $125,000. We cannot say that the trial judge abused his discretion when considering all of the relevant evidence regarding this valuation. The court's valuation is supported by the evidence.

Finally, Cleo assigns error in awarding her $75,000 in property settlement. This clearly is not an abuse of discretion when one views the division of property as a whole. As we held in *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984), awards may properly vary between one-third and one-half. The award in this case falls within those guidelines. We therefore affirm the division of property ordered by the trial court.

Appellee, Max, filed a cross-appeal challenging the award of alimony as excessive and unreasonable. We agree and order that it be reduced to $750 per month for 121 months, terminable on the death of Cleo. Our review of an alimony award is also de novo on the record. *Erstrom v. Erstrom, supra*; *Ford v. Ford*, 219 Neb. 13, 360 N.W.2d 495 (1985).

In *Gleason v. Gleason, supra,* we stated that it was an abuse of discretion for the trial court to award alimony in excess of the earning capacity of the paying party. In the case at bar the trial judge has awarded nonterminable alimony of $1,500 per month for 121 months. The facts indicate that Max has not made over $35,000 per year. The decree also orders that the $75,000

property settlement is payable in equal amounts each month for 10 years ($625 per month) at 9 percent interest per annum. The amount Max would be required to pay under the decree would be $2,125 per month, excluding interest and excluding the costs of life insurance that he is required to carry to cover the property settlement and alimony. Such a payment would be beyond Max's capabilities. Even assuming an overstatement of Max's monthly living expenses and an understatement of income, meeting a $2,125 payment per month would be beyond Max's earning capacity as shown in the record. We therefore reduce the amount of alimony awarded to $750 per month.

Respondent in his cross-appeal assigned as error "the amount of alimony" awarded and did not challenge the trial court's order requiring defendant to "maintain life insurance in a face amount sufficient to secure payment of the property settlement and alimony awards" nor the length and conditions of the alimony payments. Accordingly, those portions of the court's order are affirmed.

Costs are taxed to appellant.

AFFIRMED AS MODIFIED.