BOYD E. BURHOOP, APPELLANT, V. JEAN M. BURHOOP, APPELLEE.

380 N.W.2d 254

Filed January 24, 1986. No. 84-700.

L.W. Kelly, Jr., of Kelly & Kelly, for appellant.

Steven M. Curry of Sampson, Curry & Hummel, for appellee.

KRIVOSHA, C.J., HASTINGS, and SHANAHAN, JJ., and BRODKEY, J., Retired, and OTTE, D.J.

BRODKEY, J., Retired.

Boyd E. Burhoop appeals to this court from a decree entered in a dissolution of marriage proceeding in the district court for York County in which he was the petitioner and his wife, Jean M. Burhoop, was the respondent. The parties to this action were married in September of 1959, at which time both parties were attending college. Neither brought substantial assets into the marriage, although it is true that sometime subsequent to their marriage Boyd did inherit an interest in real estate and also a sum of money from his grandmother. Boyd's inheritance does not appear to be an issue in the present appeal, undoubtedly because both the real estate in question and the money were disposed of before the final hearing in the dissolution action.

After their marriage Jean worked part time at various jobs to help put both parties through college. She became qualified to teach school and did so on various occasions on a part-time basis. Boyd received his degree in veterinary medicine, and then entered the service for a short period of time. Four children were born of the marriage, to wit: Kimberly in 1962, Cynthia in 1964, Curtis in 1966, and Craig in 1967. The parties had been married for nearly 25 years at the time of the dissolution action. Two hearings were held in that proceeding, the first being on December 1, 1983. At that hearing a stipulation was entered between the parties with reference to the allegations of the petition regarding the birth of the children, the statistical data, the names and addresses of the parties, the date of the marriage, that the marriage was irretrievably broken, and that all

reasonable efforts of reconciliation had failed.

The second hearing was held, pursuant to a continuation of the first hearing, on June 29, 1984, following which the court entered its decree finding that the marriage was irretrievably broken and awarding custody of the two minor children to Jean. The court awarded Jean child support in the sum of $250 per month per child until the children were emancipated and awarded her alimony in the amount of $500 per month for 9 months, $750 per month for the next 8 months, and $1,000 per month thereafter. The decree also awarded specific items of personal property to Boyd, including a 1978 Chevrolet Suburban, a grand piano, and a going business concern known as Burhoop Veterinary Clinic. Jean was awarded all personal property not specifically awarded to Boyd, including a 1977 Cadillac automobile.

The decree also provided:

> Each of the parties is awarded an undivided one-half interest as a tenant in common in all real estate owned by the parties subject to existing indebtedness thereon.
>
> Each of the parties is awarded an undivided one-half interest in all contracts for the sale of real estate and or leases thereof.

It appears that all of the real estate and real estate contracts were originally held by the parties as joint tenants with right of survivorship.

The only issues before the court in this appeal, as set out in the assignments of error, are that the court abused its discretion (1) in awarding alimony to Jean, (2) in the amount of the alimony awarded to Jean, and (3) in the division of the property between the parties.

Under established law in this state we review the case de novo on the record and reach independent conclusions without reference to the conclusions reached by the trial judge. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984). It is also the law, however, that where the evidence is in conflict, this court gives weight to the fact that the trial court saw and heard the witnesses and accepted one version of the facts rather than another. *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87

(1984); *Witcig v. Witcig*, 206 Neb. 307, 292 N.W.2d 788 (1980).

Awards of alimony are initially entrusted to the discretion of the trial judge and will not be disturbed on appeal unless the record establishes that the trial court has abused its discretion. *Ford v. Ford*, 219 Neb. 13, 360 N.W.2d 495 (1985). The same standard of review applies to the division of property. *Guggenmos, supra*; *Haase v. Haase*, 210 Neb. 371, 314 N.W.2d 270 (1982). An abuse of discretion requires the "reasons or rulings of the trial judge to be clearly untenable and to deprive a party of a substantial right such as to amount to a denial of justice." *Guggenmos, supra* at 748, 359 N.W.2d at 90.

There is no mathematical formula by which awards of alimony and division of property can be made. *Cole v. Cole*, 208 Neb. 562, 304 N.W.2d 398 (1981). The ultimate test for the division of property and awards of alimony is reasonableness as determined by the facts of each case. *Sonntag v. Sonntag*, 219 Neb. 583, 365 N.W.2d 411 (1985); Neb. Rev. Stat. § 42-365 (Reissue 1984). Under § 42-365 this court, in deciding what is reasonable, should consider

> the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

A review of the record convinces us that the trial court did not abuse its discretion in its award of alimony to Jean. Nor do we believe that the trial court abused its discretion in the amount of alimony awarded. The record reveals that the parties had been married for almost 25 years at the time of the dissolution of their marriage. For the greater part of the marriage, Boyd had run a veterinary clinic in York, Nebraska, and had been financially successful in that business. The couple's lifestyle reflected Boyd's success. During this same time, Jean had primary responsibility for the rearing of the children. The record also reveals that she contributed to the family income by working various part-time jobs and that she

contributed substantially to the success of Boyd's veterinary practice.

Jean is presently selling insurance and receives a salary of $1,200 per month. However, she is still a trainee in the position, and if she does not meet her monthly quota of premiums, her employment contract is void. Jean sees to the medical and dental needs of the two minor children living with her. Both children are in need of dental work, and one is in need of continuing care for a medical condition. Jean has been paying for the medical and dental expenses for the children out of her temporary allowance. The record does not reveal whether Boyd has contributed in any respect or in any amount to the medical bills so incurred. Jean herself will need surgery in the near future to correct some problems caused by physical abuse from Boyd. For these reasons we believe and hold that the trial court did not abuse its discretion in awarding alimony to Jean.

Boyd's second assignment of error in this appeal is with reference to the amount of the alimony awarded to Jean. Boyd claims that the amount of alimony awarded is excessive because it exceeds his earning capacity. Boyd bases his argument on losses reflected in recent years on joint tax returns. In *Jenks v. Jenks*, 200 Neb. 298, 263 N.W.2d 469 (1978), we recognized that the earning capacity of both parties in a dissolution of marriage should be considered. We noted in *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984), that alimony in excess of one's earning capacity is an abuse of discretion. The relevant inquiry is whether such an award is present here.

The joint tax returns of the parties for the past few years, received in evidence at trial, show substantial losses. However, as Boyd himself points out, many of those losses are nonrecurring, resulting from the sale of a bar and liquor business and a cattle-feeding venture which went bad. It is interesting to note that during the years when the joint tax returns of the parties showed substantial losses, they bought a new $84,000 house and put $27,000 worth of improvements into it, and bought two new automobiles and a grand piano, paying cash for each. It is reasonable to conclude, therefore, that Boyd's earning capacity is far in excess of that reflected in the parties' tax returns. The income during the marriage and

how it was spent are important factors which should be considered in determining whether alimony should be awarded and the amount thereof. *Theye v. Theye*, 200 Neb. 206, 263 N.W.2d 92 (1978) (Boslaugh, J., concurring opinion).

At the time this dissolution action was filed, the parties were heavily in debt. However, since that time much of the income-producing property owned by the parties has been sold and the receipts therefrom applied to the outstanding indebtedness. Boyd admits that this reduction in indebtedness will increase the profitability of his veterinary practice in future years. Since the dissolution action was filed, Boyd has sold his established practice in York and is planning to move to another town in Nebraska where he plans on continuing to practice veterinary medicine. Thus, for the next few years Boyd's practice may not be as profitable as it has been in the past.

While the condition of a spouse's business is an important consideration in determining alimony, it is not the sole factor. *Gleason, supra*. The actual earning capacity of a spouse is frequently more important than the profitability of that spouse's business in determining the propriety of an award of alimony. *Gleason, supra*. In the instant case Boyd has undoubtedly acquired a great deal of expertise in his profession. It is reasonable to assume, therefore, that he will have a relatively high earning capacity in the future.

On the other hand, Jean has a job in which she has the capacity to earn $1,200 per month only if she sells a certain quota of premiums. She is a relative newcomer to the insurance business, and it may take her a few years to develop a clientele and derive a steady income from the sale of insurance. In view of Jean's earning capacity, her substantial contribution to the success of Boyd's veterinary practice, and her substantial contribution to the care of the parties' four children, we are of the opinion that the award of $1,000 per month as alimony is not an abuse of discretion. We therefore affirm the trial court's award of alimony in this amount for the period of time set out in the decree.

This brings us to Boyd's third assignment of error. Boyd asserts that the trial court abused its discretion in the division of property. We have held in numerous cases that there is no

magical formula for dividing property in a marriage dissolution proceeding; such awards are to be determined on the facts of each case. *Gleason, supra*. The ultimate test in making such determination is that of "reasonableness." *Burger v. Burger*, 215 Neb. 699, 340 N.W.2d 400 (1983). In the instant case the trial judge in his decree awarded the parties an undivided one-half interest in the real estate, land contracts, and leases. Awards of property jointly owned by divorced parties are not usually favored by the court. *Ragains v. Ragains*, 204 Neb. 50, 281 N.W.2d 516 (1979); *Walker v. Walker*, 193 Neb. 540, 227 N.W.2d 878 (1975). However, we have also held that when a proper situation presents itself, the trial court does not abuse its discretion in awarding the parties an undivided one-half interest in such property. See *Ragains, supra*.

We are of the opinion, however, that such a "proper situation" is not present here. Most of the properties previously referred to as owned by the parties had been sold prior to the June 1984 dissolution hearing. The trial court may have been of the opinion that, in view of the success which the parties had been having in selling the properties, selling at a private sale would continue to bring better prices than forced sales. However, it has been many months since all of the properties were listed for sale, and there are still a few properties unsold, to wit: 37 acres in York, Nebraska, two rental properties, and the real estate underlying the veterinary clinic in York. The trial court in its decree made no provision as to who was going to collect the rent, keep up the repairs and maintenance on the properties, and pay taxes and other expenses. This was an extremely bitter divorce and the parties have had difficulty agreeing on very many things.

In view of the circumstances we are of the opinion and so order that the remaining property be sold, either by agreement of the parties within 90 days from the judgment on the mandate in this case or, if the parties cannot agree, that said property be sold at public auction for its fair market value under the supervision of the trial court. The net proceeds from such sale shall be divided equally after any indebtedness on such land or property is paid.

For the reasons above stated we conclude that the judgment

of the district court must be affirmed as modified above. The parties are to pay their own court costs.

AFFIRMED AS MODIFIED.