MIKE L. KEIM, APPELLANT, V. JANIS KAY KEIM, APPELLEE.
424 N.W.2d 112

Filed June 3, 1988.   No. 86-230.

Joseph Polack and Charles O. Forrest of Polack & Woolley, P.C., for appellant.

Steven J. Riekes and Harold M. Zabin of Richards, Riekes, Brown & Zabin, P.C., for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and BLUE, D.J.

BLUE, D.J.

The appellant, Mike L. Keim, filed a petition for dissolution of marriage with the appellee, Janis Kay Keim, on January 14, 1985. A trial was held and a decree was entered which dissolved the marriage, awarded the custody of the two minor children to the respondent, and ordered the petitioner to pay child support in the sum of $300 per month per child. The decree also awarded the respondent alimony of $500 per month for a period of 96 months, to terminate on the death of the petitioner

or death or remarriage of the respondent, and divided the marital assets and liabilities as follows:

To the petitioner:

1. petitioner's interest in the Tabor, Iowa, property, which the court found to have a value of $4,125;

2. petitioner's IRA and Keogh account in the approximate amount of $61,941;

3. petitioner's 1985 tax refund in the approximate amount of $8,000;

4. the stained-glass window, which the court found to have a value of $250;

5. the 1985 Cutlass automobile, which the court found to have a value of $8,000;

6. petitioner's bank balance in the approximate amount of $2,250;

7. the note receivable from Corn Belt Bancorporation in the amount of $66,171;

8. all right, title, and ownership of petitioner's interests in the following: Keim Land & Cattle, Corn Belt Bancorporation, Thurman State Corporation, Sidney Investment Corporation, Sidney Investment Partnership, and Regency Financial Corporation. The court found these six interests to have an aggregate value of $350,000. Petitioner was ordered to assume all liabilities on these interests and to hold the respondent harmless therefor; and

9. all the personal property in the petitioner's possession.

Petitioner was required to pay the debt of $16,400 to Norwest Bank Nebraska and to hold respondent harmless thereon.

To the respondent:

1. the 1983 Ford Escort and 1974 Fiat automobiles, which the court found to have an aggregate value of $4,500;

2. the family residence at 9691 Meadow Drive, subject to the first mortgage only. The court found the residence to have a net value of $67,224. Respondent was to hold the petitioner harmless on the debt creating the first mortgage. Petitioner was to hold the respondent harmless on the debt secured, in part, by the second mortgage and to discharge the debt creating said second mortgage within 60 months;

3. the rental property at 3515 Maplewood Boulevard, subject to the mortgage thereon. Respondent was to hold petitioner harmless on the debt secured by said mortgage. The court found this property to have a net value of $25,529;

4. all household goods and other personal property in respondent's possession, which the court found to have a value of $3,360;

5. respondent's IRA in the approximate amount of $5,260;

6. respondent's bank balance in the approximate amount of $500;

7. respondent's retirement plan with the Omaha Public Schools in the approximate amount of $368; and

8. an additional property settlement in the amount of $115,000, payable in installments of $14,375 per year for a period of 8 years, with the first payment due on December 1, 1986, and subsequent payments due on the first of December of succeeding years. Interest was to accrue commencing on December 1, 1986, on the unpaid principal balance at the rate as provided by Neb. Rev. Stat. § 45-103 (Reissue 1984). This obligation was not to terminate on the death of petitioner or on the death or remarriage of respondent.

The trial court further ordered that the petitioner pay $10,000 toward attorney fees for the use and benefit of respondent's attorney and the sum of $7,000 toward respondent's expended cost.

The trial court further ordered that the petitioner maintain life insurance, with the minor children named as his irrevocable beneficiaries, in an amount sufficient to fund his child support obligations under the decree, and that he maintain health and accident insurance on the minor children. The petitioner and respondent were ordered to share equally any necessary and extraordinary medical, dental, or orthodontic expense of the minor children which was not covered by insurance. Petitioner was found to be liable for, and ordered to hold respondent harmless on, any state or federal income tax deficiencies from 1985 and preceding years, and each party was ordered to be responsible for his or her own debts incurred after January 14, 1985, unless otherwise provided in the decree.

The parties were married on June 2, 1969. Neither of the

parties brought into the marriage any assets of significant value.

The respondent graduated from the University of Nebraska at Omaha in 1969. She taught school in Omaha following her graduation until 1975. She resumed her teaching career in 1985, for which she receives an annual income of $18,032.

The petitioner graduated from the University of Nebraska at Omaha in 1970, receiving a bachelor of science degree in business administration. After graduation, he was employed by the First National Bank of Omaha. He then accepted a position with Fred Horn, who was involved in owning banks and bank holding companies. The petitioner, at the time of the trial, was employed by one bank holding company, for which he was paid $4,000 a month, and by one bank in a management capacity, where he received $1,667 a month.

Both parties prepared and offered into evidence statements of financial condition as of January 20, 1986. The petitioner's statement claims a negative net worth for the parties of $2,699. The respondent's statement claims a net worth for the parties of $373,820. The only real discrepancy between the two statements is the value of the petitioner's interests in Corn Belt Bancorporation (CBB) and Thurman State Corporation (TSC), two closely held corporations. The valuation of these corporations is a crucial issue in this case. The petitioner testified that the value of his minority interest in TSC was $62,000, based upon a formula of 1.1 times book value. He also testified that it was his opinion that the value of his minority interest in CBB was a negative $31,000, based upon book value. The petitioner called as an expert witness the chief executive officer of the First National Bank of Council Bluffs, who testified that the fair market value of the petitioner's interest in CBB was a negative $29,820 and in TSC was $62,448, before discount for being minority shares. A second vice president of Norwest Bank Des Moines testified that the value of petitioner's interest in CBB was minus $24,263 and in TSC was $38,430.

Respondent called Jerome Swords, who has had an extensive background in banking and in valuing banks. Swords testified that, in his opinion, at the time of trial the value of the petitioner's interest in CBB was $292,000 and in TSC was

$120,000, for a total of $412,000.

The trial court valued the petitioner's interest in CBB, TSC, Sidney Investment Corporation, Sidney Investment Partnership, Regency Financial Corporation, and Keim Land & Cattle (cattle herd) at $350,000.

The parties, in their statements of financial conditions, had agreed that the interest in Sidney Investment Corporation had a value of zero, that Sidney Investment Partnership had a value of negative $3,019, that Regency Financial Corporation had a value of $7,352, and that Keim Land & Cattle had a value of $141,900. In arriving at a value of all these assets of $350,000, the trial court must have determined the value of CBB and TSC to be $203,767.

We have held that a trial court's valuation of a closely held corporation is reasonable if it has an acceptable basis in fact and principle. *Bryan v. Bryan*, 222 Neb. 180, 382 N.W.2d 603 (1986). In our de novo review of this matter we find that this determination of value does not have an acceptable basis, and the proper valuation of CBB and TSC is $412,000.

The petitioner claims that the testimony of Swords as to the value of petitioner's interests in CBB and TSC should not have been received. Swords has extensive training and experience in valuing banks and was described by the former director of the Nebraska Department of Banking as "probably the foremost expert on bank valuation in the country." Apparently, petitioner's objection is that Swords did not personally inspect each bank and examine things like the local crop, physical facilities, and so forth.

Firsthand knowledge such as the above is not a requirement for the receipt of an expert opinion. "Rule 703, Nebraska Evidence Rules, clearly contemplates admission of an expert's opinion based on hearsay supplying facts or data for that opinion, rather than a requirement of firsthand knowledge as the only source of information for an expert's opinion." *Gibson v. City of Lincoln*, 221 Neb. 304, 311, 376 N.W.2d 785, 790 (1985). The court went on to point out that this matter goes to the weight to be given to the opinion by the trier of fact and not to its admissibility, preference, or priority. "Generally, an expert witness' firsthand knowledge is a factor which may affect such

witness' credibility and weight given to the testimony from that expert, but presence or absence of firsthand knowledge does not, by itself, necessarily establish preference or priority in evidentiary value." *Id.* at 313, 376 N.W.2d at 791.

The rule is that a trial court's ruling in receiving expert testimony will be reversed only when there has been an abuse of discretion. *State v. Miner*, 216 Neb. 309, 343 N.W.2d 899 (1984); *Danielsen v. Richards Mfg. Co., Inc.*, 206 Neb. 676, 294 N.W.2d 858 (1980). The trial court did not abuse its discretion in receiving the testimony of Swords.

The petitioner's chief complaint seems to be that the trial court did not deduct from the marital assets indebtedness in the amount of $418,029.

In its decree the trial court found that the petitioner's interests in Keim Land & Cattle, TSC, CBB, Sidney Investment Corporation, Sidney Investment Partnership, and Regency Financial Corporation had an aggregate value of $350,000. The trial court further found that petitioner should assume all liabilities on the interests set out above and should hold the respondent harmless from that indebtedness, which petitioner claims must be deducted. The indebtedness associated with those assets is as follows:

| | | |
|---|---|---|
| 1. Keim Land & Cattle | | $228,726 |
| 2. CBB | | |
| (a) note payable to First Interstate Bank of Des Moines | | 62,588 |
| (b) note payable to Nelson | | 81,250 |
| 3. TSC note payable to Grotenhuis | | 20,190 |
| 4. Sidney Investment Corporation | | 0 |
| 5. Sidney Investment Partnership | | 0 |
| 6. Regency Financial Corporation | | 13,500 |
| 7. accrued interst payable on notes | | 11,775 |
| | Total | $418,029 |

In dividing the marital property the trial court should take into consideration the indebtedness of the parties in order to divide the net marital estate. *Black v. Black*, 221 Neb. 533, 378 N.W.2d 849 (1985).

It is important to note that the parties offered into evidence exhibits which show identical amounts of liabilities. It is

apparent that the trial court did not give full consideration to these debts that were agreed upon by the parties.

In appeals concerning dissolution of marriage, the Supreme Court is required to try the case de novo on the record and reach independent conclusions on the issues presented by appeal without reference to the conclusions or judgment of the district court. *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984). We have also stated that the division of property and the awarding of attorney fees in marriage dissolution cases are matters initially entrusted to the sound discretion of the trial judge, which matters, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion; however, where the evidence is in conflict, this court may give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than another. *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984); *Hamm v. Hamm, ante* p. 294, 422 N.W.2d 336 (1988).

With the above rules in mind, the decree of the district court is modified as follows:

The petitioner is awarded all right, title, and ownership of petitioner's interests in the following:

1. Keim Land & Cattle;
2. CBB;
3. TSC;
4. Sidney Investment Corporation;
5. Sidney Investment Partnership; and
6. Regency Financial Corporation.

The court finds these interests have an aggregate value of $558,233. Petitioner is to assume all liabilities on the interests set out above and to hold respondent harmless therefor. These liabilities are in the sum of $418,029.

Under the division of the assets as provided in the decree, this would result in an award for the petitioner of $708,970. Since petitioner was required to also pay the debt to Norwest Bank Nebraska in the sum of $16,400, his liabilities would amount to $434,429. Deducting this figure from his aggregate assets gives him $274,541. For the respondent the award would be $165,888 less liabilities of $64,516, for a figure of $101,372.

Awards of property to the spouse generally vary from one-third to one-half of the value of the property involved, depending upon the facts and circumstances of the particular case. *Martin v. Martin*, 215 Neb. 508, 339 N.W.2d 754 (1983). However, there is no mathematical formula for dividing property when a marriage is dissolved. Such awards are determined by the facts of each case, the ultimate test being one of reasonableness. *Reuter v. Reuter*, 218 Neb. 732, 359 N.W.2d 78 (1984). We believe that under consideration of the facts of this case, the division of assets should approximate one-half to each party. To accomplish this, the decree of the trial court is modified to provide for an additional property settlement award of $80,000, rather than $115,000, said amount to be paid in eight equal annual installments commencing December 1, 1986, together with interest on the unpaid principal balance to accrue commencing on December 1, 1986, at the rate as provided by § 45-103. The remainder of the provision of the decree as it relates to this property is to remain in effect.

The petitioner claims that it was error to award the respondent alimony of $500 for 96 months, or until the death of either party or the remarriage of respondent.

As in the division of property, there is no mathematical formula for the awarding of alimony. The ultimate test for the division of property and award of alimony is reasonableness as determined by the facts of each case. *Sonntag v. Sonntag*, 219 Neb. 583, 365 N.W.2d 411 (1985); Neb. Rev. Stat. § 42-365 (Reissue 1984). Under § 42-365, this court, in deciding what is reasonable, should consider

> the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

A review of the record convinces us that the trial court did not abuse its discretion in awarding alimony. The petitioner has an annual income of approximately $72,000 and in the past has

had an even greater income. It is reasonable to assume that he will have a relatively high earning capacity in the future. It is proper to consider this in setting alimony. *Burhoop v. Burhoop*, 221 Neb. 657, 380 N.W.2d 254 (1986).

While the petitioner, in an exhibit, shows expenses greater than income, a careful appraisal of his asserted expenses shows a somewhat different picture. For instance, he will no longer have payments on the house mortgage. Also, the trial court reasonably scrutinized the $200 for miscellaneous business expenses which petitioner said were "just a guesstimate," and also the $1,000 a month to a person whom he identified as "the girl I live with" and as his "assistant."

We do not believe the trial court abused its discretion in the amount of alimony awarded.

The decree of dissolution entered by the district court is affirmed but modified as to the amount awarded as a part of the property division.

AFFIRMED AS MODIFIED.