IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


ESPEJO V. ESPEJO


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


JESS A. ESPEJO, JR., APPELLANT AND CROSS-APPELLEE,

V.

ANNE M. ESPEJO, APPELLEE AND CROSS-APPELLANT.


Filed October 28, 2025.    No. A-24-879.


Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed in part as modified, and in part remanded with directions.

Philip B. Katz and John Andrew McWilliams, of Gross, Welch, Marks & Clare, P.C., L.L.O., for appellant.

Donald A. Roberts, of Roberts Law, L.L.C., for appellee.


RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

INTRODUCTION

Jess A. Espejo appeals the decree entered by the Douglas County District Court, dissolving his marriage to Anne E. Espejo. Jess contends that the district court erred by declining to order Anne to encumber or sell the marital home in the event she failed to make the equalization payment. Anne cross-appeals and assigns that the district court erred by finding that the home was marital property and failing to give her credit for the premarital funds that she used to purchase the home. For the reasons set forth herein, we affirm in part as modified, and remand with directions for further proceedings.


- 1 -

STATEMENT OF FACTS

Jess and Anne met and began a romantic relationship in 2008. At some point, they began living together in Anne's residence. In October 2011, before the parties were married, Anne sold her residence and purchased a different home on South 49th Avenue in Omaha, Nebraska (the home), paying for the purchase with her own funds. In August 2012, Anne added Jess as a joint tenant to the home's warranty deed. The parties were married on October 6, 2013. No children were born of the marriage. Jess filed a complaint for dissolution on May 24, 2021. This case involves the proper classification of the home.

Trial was held February 8, 2024. We summarize the trial evidence only as it pertains to the issues on appeal.

While Jess and Anne were in a dating relationship, Jess moved into Anne's home on Irvington Road in Omaha. Later, when he and Anne were still dating but contemplating marriage, he suggested that she sell her home on Irvington Road and that the couple find a new home together. Jess testified that the couple's agreement was that Anne would then "put me on the deed as part of our future marriage, and to upgrade the home as needed, and she did." Anne disagreed with this testimony.

Anne testified that she began looking for a new house when she and Jess started living together in her home on Irvington Road. She found the new home in Omaha on her own and purchased the home in her individual name. A warranty deed for the home, dated October 27, 2011, was entered into evidence and lists Anne as the sole grantee. Both Jess and Anne testified that Anne paid the entire purchase price of $87,000. A Buyer's Settlement Statement entered into evidence likewise reflects that Anne furnished the $87,000 contract sales price at closing. Anne testified that because she paid the full purchase price at closing, the home did not have a mortgage loan.

A certified copy of a joint tenancy warranty deed for the home, dated August 21, 2012, was entered into evidence. The deed reflects that Anne, as a grantor, conveyed the property to Anne and Jess as joint tenants for $1 of consideration. Anne testified that when she executed the joint tenancy warranty deed, she did not intend to gift Jess a one-half interest in the home. Anne did not have a lawyer at the time and executed the deed herself. At the time of the deed's execution, Anne believed that she was simply adding Jess' name to the deed.

Anne thereafter showed the warranty deed to Jess and explained to him, "in case something happens to me, you and [Jess' young daughter] have a place. I don't want to worry about it." Anne testified that Jess did not offer Anne any money as a grantee and told Anne, "I don't want that." When asked on cross-examination whether she understood the legal significance of a joint tenancy warranty deed, Anne agreed that if you add someone's name to the deed, they become an owner of the property.

Jess and Anne lived in the home from the time it was purchased by Anne in October 2011 to the time of their marriage in October 2013. Shortly after the couple married, Jess moved to Waterloo and requested that Anne join him. It is unclear how long one or both of the parties lived in Waterloo. Jess testified that he moved back into the home in June 2021 in an attempt to reconcile with Anne and lived there until the couple separated on March 24, 2023.

At some point, a $9,000 Home Equity Line of Credit (HELOC) loan was taken out against the home. Jess testified that the HELOC was used to purchase furniture and finance home improvements and that Anne used $2,500 for personal use. Anne testified that the HELOC was in her name only and that the loan payments came out of her account, but that Jess was a cosigner to the loan. Anne testified that she paid for the homeowner's insurance, the cable, and the HELOC; that Jess paid the utility bills; and that the two split the cost of groceries.

Jess asked the district court to consider the home a joint marital asset as he owned a full interest in the home at the time he entered into marriage with Anne. Jess proposed that the home be awarded to Anne with a net value of $176,000. He also requested that the home be encumbered or sold to facilitate Anne's equalization payment to him. Jess did not believe that Anne should receive any credit for the $87,000 she spent to purchase the home.

Bruce Wilkie, a certified residential real estate appraiser, appraised the home. Wilkie conducted a fair market valuation of the home in 2023, which included an inspection of the home in June and research of the real estate market for comparable sales in the area. Wilkie's appraisal was entered into evidence and reflects that as of March 24, 2023 (the date of parties' separation), the fair market value of the home was $185,000.

Jess and Anne both testified about their improvements to the home, including replacing the kitchen and bathroom flooring, a fence, and the roof, as well as some interior painting. Wilkie testified that the painting and flooring would be considered an improvement to the home, while replacing the fence and roof was routine maintenance. Wilkie attributed the increased value of the home to a combination of appreciation from the market and other improvements to the home, though Wilkie noted that most of the increase in the home's value was due to market forces.

Anne testified that at the time of trial, she was working during the school year as a paraprofessional for $16.39 an hour, 32.5 hours a week. Jess offered Anne's answers to interrogatories into evidence, which included details regarding Anne's financial accounts and other assets; however, the district court sustained Anne's hearsay objection.

The district court entered a decree of dissolution of marriage on May 1, 2024. The court credited Anne's testimony that she did not intend to gift Jess any interest in the home when she executed the joint tenancy warranty deed, and that she put Jess' name on the deed only in the event something happened to her so he and his young daughter would have somewhere to live. The court also credited Wilkie's testimony that the increase in the value of the home was due to market forces and not due to the active efforts of either spouse. The court determined that Anne should be awarded the home as her premarital property, free and clear of any interest of Jess.

The court ordered Anne to pay and hold Jess harmless and indemnify Jess from the outstanding HELOC and further ordered Anne to refinance the HELOC in her name only within 120 days of the decree. The court ordered Jess to execute a quitclaim deed to Anne. After classifying and awarding additional property, Anne was ordered to make a $1,151.50 equalization payment to Jess. The balance sheet attached to the decree indicated that Jess was receiving personal property valued at $9,450 and Anne was receiving personal property valued at $11,753. The balance sheet did not include the HELOC debt.

Jess filed a motion for a new trial or to alter or amend judgment on May 13, 2024. He alleged that the district court erred in finding that the home was nonmarital property. The motion requested that the court find the home to be marital property, valued at $176,000 ($185,000

appraised value less the $9,000 HELOC loan), and order Anne to make an equalization payment of $89,151.50 to Jess.

On August 8, 2024, the district court sustained Jess' motion to alter and amend and that same day entered an amended decree of dissolution. The court again credited Anne's testimony regarding her intent at the time she executed the deed but found that the deed was clearly a joint tenancy warranty deed that was filed 2 years before the marriage. Thus, the court found that Anne had made a voluntary gift of an undivided one-half share of the home to Jess and reclassified the home as marital property. Anne was again awarded the home. With the entire value of the home included in the marital estate ($185,000), the balance sheet attached to the amended decree showed that Jess' marital assets remained at $9,450, and Anne's now totaled $197,253. The court ordered Anne to make an "equalization" payment of $68,901 to Jess within 120 days of the entry of the decree. This resulted in Jess receiving 38 percent and Anne receiving 62 percent of the total marital assets. The court's balance sheet again did not deduct the HELOC debt.

On August 18, 2024, Jess filed another motion to alter or amend judgment. He requested a larger equalization payment and that the district court order the encumbrance or sale of the home within 120 days of a second amended decree in the event Anne failed to make the equalization payment. A hearing on the matter was held on September 30. The court denied the motion in an order entered on November 1. We note that a nunc pro tunc order was also entered, correcting the year of marriage from 2014 to 2013.

Jess appeals and Anne cross-appeals.

## ASSIGNMENTS OF ERROR

Jess assigns that the district court erred by declining to order Anne to encumber or sell the home if she failed to make the equalization payment.

Anne cross-appeals and assigns that the district court erred by (1) finding that the home was marital property and (2) failing to give her credit for the $87,000 in premarital funds that she used to purchase the home.

## STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Backhaus v. Backhaus*, 318 Neb. 891, 20 N.W.3d 81 (2025). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id*.

## ANALYSIS

Neb. Rev. Stat. § 42-365 (Reissue 2016) authorizes a trial court to equitably distribute the marital estate according to what is fair and reasonable under the circumstances. *Parde v. Parde*,

313 Neb. 779, 986 N.W.2d 504 (2023). In a marital dissolution action, the purpose of a property division is to distribute the marital assets equitably between the parties. *Id*. There is no mathematical formula by which property awards can be precisely determined, but as a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Id*.

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019). Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. *Id*. Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property. *Parde v. Parde, supra*. The burden of proof rests with the party claiming that the property is nonmarital. *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024).

The equitable division of property is a three-step process. The first step is to classify the parties' property as either marital or nonmarital, setting aside the nonmarital property or nonmarital portion of the property to the party who brought the property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. And the third step is to calculate and divide the net marital estate equitably between the parties. *Parde v. Parde, supra*.

*Classification of the Home.*

We begin with Anne's assignments of error on cross-appeal. Anne assigns that the district court erred by finding that the home was marital property. Anne argues that the court erred in reclassifying the home as marital property because it found in both decrees that she did not intend to gift Jess an interest in the home.

In its amended decree, the district court found that Anne made a voluntary gift of an undivided one-half share of the home to Jess and reclassified the home as marital property. However, the present case differs from that in which a husband and wife take title to property as joint tenants during the marriage, in which case a gift is rebuttably presumed even if one party provides the financing. See, e,g, *Brown v. Borland*, 230 Neb. 391, 432 N.W.2d 13 (1988). Here, the conveyance to joint tenancy occurred before the marriage, and the above presumption does not apply.

Anne's conveyance prior to the marriage resulted in each party having an undivided premarital interest in the property. Anne nevertheless asserts that she lacked the present donative intent required for the deed to be a valid inter vivos gift.

The primary rule in construing a deed is to ascertain the intention of the parties from the deed itself, but when such intention is obscure or uncertain, courts may refer to subordinate rules of construction and permissible surrounding circumstances. *In re Estate of Everhart*, 18 Neb. App. 413, 783 N.W.2d 1 (2010). Where a deed is plain and unambiguous, its meaning is to be determined without reference to extrinsic facts. *Schaffert v. Hartman*, 203 Neb. 271, 278 N.W.2d 343 (1979), *disapproved on other grounds, Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992).

The district court declined to interpret Anne's intent at the time the 2012 warranty deed conveyed title to Anne and Jess as joint tenants in such a way as to render the deed a nullity. We cannot say that it erred in this regard. The deed itself contains no ambiguity or uncertainty in its

terms. Though the court found Anne's testimony credible that her intent at the time of conveyance was only to provide for Jess and his daughter upon the event of her death, and not to gift him with an interest in the home, those facts do not render the deed a nullity. Because the intention to convey a joint tenancy to Anne and Jess is clear from the four corners of the 2012 warranty deed, we decline to examine other extrinsic evidence, including Anne's reasoning or motivations. See *In re Estate of Everhart, supra*. See, also, *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015) (parol evidence rule renders ineffective proof of prior or contemporaneous oral agreement that alters, varies, or contradicts terms of written agreement).

The conveyance of the warranty deed created a joint tenancy between Anne and Jess. Each tenant in a joint tenancy owns the whole of the property from the time at which the interest is created. *In re Estate of Potthoof*, 273 Neb. 828, 733 N.W.2d 860 (2007). The warranty deed was conveyed in August 2012 and the parties were married in October 2013. Thus, each party had an undivided premarital interest in the property at the time of their marriage. See *Dooling v. Dooling*, 303 Neb. 494, 930 N.W.2d 481 (2019) (finding exceptions to marital estate include property that a spouse acquired before the marriage).

Nevertheless, we agree that the parties' premarital interests in the home became marital property following their marriage. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). Though Anne and Jess each owned the whole of the home prior to their marriage, each spouse's undivided interest in the home became inextricably mixed with the separate property (the other undivided interest) of the other spouse during the marriage. Both Anne and Jess lived in the home together at times both before and after their marriage. Additionally, there was testimony that both Anne and Jess contributed to household bills and together made maintenance repairs and general improvements to the home.

Based on the circumstances of this particular case, we find the parties' premarital ownership interests of the home were sufficiently comingled as to render the home marital property. Although we reach this conclusion for slightly different reasons than the district court (which found that Anne made a gift to Jess of an undivided one-half interest in the property), we agree with the district court that the home became marital property. An appellate court may affirm a lower court's ruling that reaches the correct result, albeit based on different reasoning. *White v. White*, 316 Neb. 616, 6 N.W.3d 204 (2024).

*Credit for Premarital Funds.*

Anne next assigns that the district court erred in failing to give her credit for the $87,000 in premarital funds that she used to purchase the home. At trial, both parties agreed that prior to the marriage, Anne paid the entire purchase price of $87,000 of the marital home. The district court did not credit Anne for this amount.

The district court awarded Jess personal property valued at $9,450. The court awarded Anne the home valued at $185,000, together with personal property, for total assets valued at $197,253. The court did not specifically address the HELOC debt in its division of the marital estate, although in its award of the home, it ordered that Anne hold Jess harmless from the debt and refinance it.

We find the case of *Heald v. Heald*, 259 Neb. 604, 614, 611 N.W.2d 598, 606 (2000) to be instructive. In *Heald*, prior to the marriage, the husband paid a $5,380 downpayment on a home that was originally titled in the husband's name. During the marriage, the husband conveyed title to the wife and himself as joint tenants. The district court did not credit the husband the amount of the downpayment, citing *Brown v. Borland* for the proposition that because the parties took as joint tenants, a gift is presumed to be made by the spouse furnishing the consideration to the other. In so doing, however, the district court did not recognize the fact that when the husband made the downpayment, he was not yet married, unlike in *Brown v. Borland*, where the property was acquired and transferred during the marriage. On appeal, the Supreme Court found that the downpayment amount should be excluded from the marital estate as premarital funds and that the husband was entitled to a credit for the $5,380 downpayment.

Like in *Heald*, both parties agreed that Anne used her own separate funds to purchase the home for $87,000 before the parties' marriage. Further, Anne purchased the home with her separate funds before she placed it into joint tenancy. Under these circumstances, Anne's premarital, pre-conveyance, contribution of $87,000 to the purchase of the home should be credited to her.

We therefore modify the district court's judgment to reflect this credit, which reduces the marital value of the home to $98,000, and reduces the value of the marital assets awarded to Anne to $110,253. The new total value of the marital assets is $119,703. In the initial decree, wherein the court awarded the home to Anne as her premarital property, the court equalized the division of the personal property by requiring Anne to pay Jess a sum that resulted in each party receiving 50 percent of the marital estate. In the amended decree, wherein the court included the home in the marital estate, the district court awarded Anne 62 percent of the marital assets and Jess 38 percent. The district court did not explain the rationale for the unequal percentages in its amended decree. Because we have modified the decree to provide Anne with credit for her premarital payment for the home, we remand the cause to the district court to determine the division of the marital estate and amount of any equalization payment.

*Order to Encumber or Sell the Home.*

Lastly, Jess assigns that the district court erred when it declined to order Anne to encumber or sell the home if she failed to make the equalization payment to Jess. He notes that the home made up approximately 90 percent of the marital estate. Jess essentially argues that the amended decree operated as a conveyance of his interest in the home to Anne but did not provide him a similar safeguard to ensure that he would receive the equalization payment in return. He asserts that, other than the home, the marital estate had no assets that Anne could use to satisfy the payment; therefore, encumbering the home or requiring its sale was the only reasonable way to effectuate her payment.

A court in a dissolution action may provide for the sale of all or part of the parties' assets in lieu of dividing them, if to do so is reasonable in the light of the facts, the circumstances of the parties, and the nature of their property. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995); *Kellner v. Kellner*, 8 Neb. App. 316, 593 N.W.2d 1 (1999). Such action, of course, must be within the statutory dictate that the division of the assets be reasonable, having regard for the

circumstances of the parties as provided in § 42-365, and that it satisfy the ultimate test of fairness and reasonableness articulated by case law. *Kellner v. Kellner, supra*.

It is evident that Nebraska courts do not generally favor ordering sales of marital assets to facilitate distribution. See *Kellner v. Kellner, supra*. However, although ordering the sale of parties' marital assets is generally not the favored method of disposing of property, there are cases in which a sale was the only practical way to divide the parties' assets. See *Kellner v. Kellner, supra*; *Burhoop v. Burhoop*, 221 Neb. 657, 380 N.W.2d 254 (1986); *Walker v. Walker*, 193 Neb. 540, 227 N.W.2d 878 (1975).

Evidence at trial established Anne's hourly wage for her paraprofessional position. However, no additional evidence was adduced regarding Anne's finances as Anne's answers to interrogatories were not received by the district court. We do not have a bill of exceptions from the hearing on Jess' motion to alter or amend to know whether any other financial information was received in evidence.

We disagree that a sale of the home is the only practical way to effectuate Anne's equalization payment to Jess. Jess argues that the district court should have alternatively ordered an encumbrance on the home, such as a mortgage. As noted by Anne, Jess has a judgment lien against the property that could be executed upon, or he could pursue contempt proceedings should Anne fail to make the equalization payment. We note that the home was valued at $185,000, with only a debt of $9,000, such that there is sufficient equity in the home to protect Jess' rights.

We find that the district court did not abuse its discretion in awarding the home to Anne as opposed to ordering its sale, and in failing to further encumber the property.

CONCLUSION

The district court correctly included the home in the marital estate and did not abuse its discretion by awarding the home to Anne without requiring its sale or encumbrance. The district court, however, erred in failing to give Anne credit for the $87,000 premarital purchase of the home. We therefore modify the amended decree to provide for this credit, and we remand the cause to the district court with directions to determine the property division and amount of any equalization payment. In all other respects, the amended decree of the district court is affirmed.

AFFIRMED IN PART AS MODIFIED, AND
IN PART REMANDED WITH DIRECTIONS.