NANCY KELLNER, APPELLEE, V. DENNIS P. KELLNER, APPELLANT.

593 N.W.2d 1

Filed April 20, 1999.   No. A-98-338.

John W. Ballew, Jr., of The Bruckner/Ballew Law Firm, P.C., for appellant.

John H. Sohl and Becky J.W. Dias, of Edstrom, Bromm, Lindahl & Sohl, for appellee.

IRWIN, Chief Judge, and HANNON and SIEVERS, Judges.

HANNON, Judge.

This is a dissolution action between Nancy Kellner, petitioner, and Dennis P. Kellner, respondent. The Kellners were married for 23 years and had accumulated considerable property. The issues litigated have to do with the property division and alimony. The trial court awarded Dennis as his "separate property" his clothing and personal effects, the 1989 Chevrolet Sierra, and some intangible property in his possession. The court awarded Nancy her clothing and personal effects, some household effects, and memorabilia listed on exhibit 24.

The decree goes on to provide that Dennis shall convey all his interests in the parties' property "not specifically set forth above" to Nancy, that Nancy shall hold title to one-half of such property as trustee and the other one-half in her own name, and that she shall sell all of the tangible property and pay one-half of the net proceeds to the clerk of the district court for Dennis' benefit. The effect of this order is to order all the parties' land, livestock, and farm equipment to be sold by Nancy within a specified timeframe and the proceeds to be divided.

The decree does not clearly distribute all of the parties' considerable intangible personal property. Dennis was also ordered to pay Nancy $200 per month alimony for 121 months and other sums set forth later in this opinion. Dennis appealed, in summary arguing that the court erred in liquidating the marital estate, in allowing Nancy to do so, and in awarding alimony.

We find that the facts in this case justify an equal division of the parties' marital property, which facially the trial court did, but because the court's decree did not provide for distribution of the considerable intangible personal property, the true effect of the decree is open to dispute. We find that it was an abuse of discretion for the trial court not to clearly provide for distribution of all of the parties' intangible property, to order the sale of all their tangible property, to authorize Nancy as a fiduciary to sell that property or buy it herself, and to award Nancy alimony.

We, therefore, in part reverse, and remand with directions to provide for an equal distribution of all of the parties' marital estate, which shall be by in-kind distribution insofar as possible under the facts existing at the time of remand; for sale of the property that cannot be divided in kind under the direction of the court by someone not interested in either party; and for vacating the judgment for alimony. But we otherwise generally affirm as modified.

## SUMMARY OF EVIDENCE

At the time of the trial on October 10, 1997, Nancy was 42 and Dennis was 45. They married on September 7, 1974, and they had two children, who have reached the age of majority. Both parties graduated from high school but neither attended college. During most of their marriage, they farmed, raising cattle and crops. At one time, they farmed 1,000 acres of row crops and had 300 acres of pasture. They owned some of the land but rented most of it.

Since 1992, they have leased their land out for $90 an acre. They also leased an additional 100 acres which they have sublet for an additional $1,500 per year profit. The Kellners' rent payment was $3,750 payable twice a year on March 1 and December 1, 1993. At the time of their separation, they continued to run a small herd of stock cows, and they owned considerable machinery, several vehicles, tools, hay, feed, and grain.

*Land Purchases.*

Dennis purchased 80 acres of land in 1973 before their marriage for $32,000, using "about $9,000" of his premarital assets as a downpayment on the tract of land. In 1995, the parties conveyed this land to themselves as joint tenants. At the time of trial, the property was still subject to a $16,955 mortgage. On September 15, 1977, they paid $44,000 for 40 acres of land located about 1½ miles from the 80-acre tract. At the time of the decree, the 40-acre tract of land was subject to a mortgage of $49,997. Their home was situated on the 40 acres, and they lived there until Nancy moved out on June 30, 1996, when they separated. Dennis continued to reside there.

*Marital History.*

Before they were married, Nancy worked full time as a secretary for the Lincoln Public Schools and at a Denny's restaurant as a waitress, and Dennis farmed. During the marriage and until 1992, Nancy primarily kept the parties' home and cared for their children, along with helping out with labor on the farm and taking care of the finances. She stated that she took care of killing the thistles, repairing the fences, and milking the cows. When Dennis was away from home for work, she managed the farm. Since 1993, Nancy has worked nearly full time as a waitress at a steakhouse and with tips earned about $800 a month, although she was making less the year before the hearing because she had to prepare for the divorce proceedings.

Dennis worked full time as a farmer until 1992. He then took a job on a farm near Atkinson, Nebraska, about 200 miles away from their home. He earned $1,200 a month plus housing and health insurance. He took 60 cows with him under a sharecrop arrangement in which he kept the cattle on his employer's land. Nancy testified that when the cattle were sold, she and Dennis received 40 percent of the proceeds from the sale and his employer received the other 60 percent.

Dennis remained near Atkinson until late 1994 or early 1995 when he returned to the parties' farm. He attempted to continue to farm their land, and he took a job working full time for Virgl Implement, Inc. (Virgl). He worked full time for "[n]ot quite a year" but left Virgl because he found he could not work full

time and still take care of the parties' livestock. He then took a job working part time on his cousins' farm, making about $800 a month. In April 1996, he resumed working for Virgl as a "jack-of-all-trades," earning about $800 a month. He also worked part time caring for their livestock. His income from farming is difficult to determine. According to the parties' joint income tax returns, the farming operation lost money in 1994, 1995, and 1996.

*What Nancy Would Like.*

At the trial, Nancy testified that she would like to be awarded the following items: the 80-acre tract of land, but she testified she would take the 40-acre tract instead; personal items as described in exhibit 24; $1,500 to repair her teeth that were injured after Dennis punched her, a fact Dennis disputes; attorney fees; alimony; and one-half of the proceeds from the sale of the household goods and other personal assets. During the trial, Nancy changed her testimony and requested that everything be sold, except the household goods she had purchased upon their separation and some personal items.

*What Dennis Would Like.*

Dennis stated he would like the following: 80 acres, if he cannot have the whole farmstead; most, if not all, of the vehicles (except Nancy's personal one), livestock, machinery, and cattle at the values placed on that property by Nancy's evidence; and the cattle brand.

The evidence shows that Dennis has had possession of the parties' livestock, hay, grain, and other farm property and that he had been managing since their separation the rental of the land that they own and that they sublet. Nancy claims that he "took" a great deal of property during this time. He testified that he spent the income he received from the sale of the farm assets. He introduced a list of items of income and expenses from the time the parties separated until the time of trial. This list amounts to an informal accounting by Dennis of the farm-related expenses and personal receipts and disbursements. It appears that he accounted for the money he received, but the trial court made no findings with respect to this accounting, neither accepting nor rejecting it.

*Court's Decree.*

The trial court awarded Dennis as his sole property his accounts receivable, his clothes and personal effects, the 1989 Chevrolet Sierra, the life insurance policies owned by him, and the bank accounts in his possession, subject to the liens thereon. The trial court made *no finding of the values of these awards to* Dennis, but from a study of the record, we compute that in effect the above-mentioned provisions of the decree awarded Dennis the following property values as shown:

| | |
|---|---|
| Checking account | $ 600 |
| Cash he received from joint savings | 3,600 |
| Savings account balance he "took" | 1,640 |
| Life insurance policies | 27,652 |
| 1989 Chevrolet Sierra | 10,000 |
| Total | $43,492 |

We note that the trial court's decree did not give Dennis the furniture and other household property in the home but ordered them sold.

The $3,600 and $1,640 items arose as follows: The parties had a joint savings account. Dennis withdrew $3,600 from that account, and then Nancy withdrew a like amount. Nancy testified Dennis then withdrew the balance of the account, $1,640, and kept it. Dennis claimed to have spent the $3,600 he received to pay pasture rent and farm expenses; however, he does not show it in his accounting. The court canceled Dennis' $1,640 "taking" by awarding Nancy a judgment of $800. However, we find that piecemeal approach does not give a complete picture.

The court awarded Nancy as her separate property only "her clothing and personal effects, and the items shown on Exhibit 24." (Exhibit 24 is a list of family heirlooms and mementos which Nancy testified were in Dennis' possession.) We are unable to find any other award to Nancy except for one-half the net proceeds from the sale of the assets. The evidence shows she had considerable personal property in her possession, including some "takings" of her own, and including two accounts which contained nonmarital property.

None of this property is provided for in the decree. The decree does not provide for Nancy to account for anything other than the sale proceeds, although it may be argued it requires her

to distribute one-half of the intangible personal property. However, since the decree does not provide for distribution or the liquidation of an automobile and furniture clearly in Nancy's possession, it seems probable the court intended Nancy to have such property.

The decree is simply unclear on property that was in Nancy's possession, but it appears that as a practical matter under the decree, Nancy would have received the below-listed property that was clearly marital property and two accounts containing nonmarital property which we do not list:

| | |
|---|---:|
| 1988 Buick | $ 3,000 |
| Cash she received from joint savings | 3,600 |
| Household goods in her possession | 3,000 |
| Checking account | 262 |
| Certificates of deposit | 35,302 |
| Savings in Wahoo State Bank | 4,725 |
| Total | $49,889 |

This list includes certificates of deposit and a savings account which she readily admitted to having changed from their joint names to her name. The furniture listed is valued at the amount she testified she paid for it after they separated. The Buick was valued at $3,000 in the evidence.

The decree ordered Dennis to transfer all of his interests "in and to any and all of the parties' property, real, personal and mixed, not specifically set forth above." The decree does provide that Nancy shall "maintain her personal interests in one-half (1/2) of all of the parties' property," and it goes on to provide that she shall hold one-half in trust for Dennis. It does not award Nancy an automobile, but it does provide for the sale of all vehicles "not currently the main vehicle" of either party, and the evidence shows she had possession of the Buick which would have been marital property and her "main vehicle." We cannot tell what the court intended to order with respect to property solely in Nancy's possession or ownership. The decree awarded Dennis the Chevrolet Sierra but awarded Nancy a judgment of one-half its value.

The evidence shows the parties owned considerable personal property, and the value of that property was well litigated. Most of the trial consisted of testimony by the parties' respective

experts on that property. Dennis introduced an exhibit listing the livestock he would like to have distributed to him at the testified values set by Nancy's expert. The trial court did not clearly make a finding of the value of the cattle, machinery, and other farm property, but it did attach to the decree an exhibit which listed and valued all of the parties' property, real, personal, and mixed, including intangible property.

Furthermore, the decree ruled Nancy could buy, rather than sell, the property in the exhibit for the values set forth on that exhibit. That exhibit listed 40 acres of real estate at $175,000 and 80 acres of real estate at $117,000. (No evidence in the record supports a market value of $117,000 for the 80 acres.) The exhibit listed four vehicles, including the Chevrolet Sierra awarded to Dennis, for a total value of $27,750; household goods and furnishings, and guns valued at $15,000; farm machinery, equipment, and tools at $45,740; "Perimeter Cattle Yd Fencing" at $18,480; cattle, two horses, and two llamas at $45,500; and hay, grain, and feed at $34,368. These values are listed in the exhibit to the decree as "MARKET VALUE," but with the exception of the land value of the 80 acres, the exhibit to the decree is merely a copy of an exhibit offered by Nancy at trial. The exhibit to the decree appears to be a summary of Nancy's evidence on the value of the property.

We list the above summary of the values of the property to give the reader a notion of the scope and possible value of the parties' property, not as a determination by this court of the value of that property. We do this because we recognize that upon remand, it will be necessary for the trial court to determine the value of the property.

The decree ordered Dennis to convey all of his interests in any of the parties' property, "real, personal and mixed," to Nancy. The decree provided that Nancy shall hold her one-half interest in her own name and that she shall hold his one-half interest as a trustee. The decree then provided that Nancy shall sell all their property in the manner provided in the decree and divide the net proceeds.

The court ordered Dennis to vacate the 40-acre tract within 60 days of the decree. The decree then ordered Nancy to sell the farm equipment; shop tools; household goods; furniture left in

the farmhouse; all antiques, guns, and vehicles not currently the parties' main vehicles; a belt buckle collection; a toy tractor collection; and all livestock. The decree also ordered Nancy to sell the 80 acres within 24 months and, after deducting the costs of the sale, to pay $9,000 plus one-half of the net proceeds to the clerk of the district court to be distributed to Dennis. Nancy was ordered to sell the 40-acre tract within 36 months in "1, 2 or 3 tracts."

The decree prohibits Dennis from having anything to do with the sales, beyond "readying any items for the sales." The decree then provided that if Nancy

> does not succeed in selling the property, or decides she would rather buy out Respondent's interests in any of the property, she shall do so by paying any sums as represent Respondent's share to the Clerk of the Saunders County District Court . . . as set forth above using the values set forth on Exhibit No. 1, which is attached hereto.

Exhibit 1 is the exhibit attached to the decree described earlier.

In addition to the above orders, the decree provided that within 60 days, Dennis shall pay and obtain proof of payment of all rental expenses and file proof of payment with the clerk of the district court and that he shall pay to Nancy one-half of "all traceable rental income still in his possession." It provides that after entry of the decree, Nancy shall "have complete control over and shall receive all rental payments from tenants and shall also pay any applicable taxes, etc., relating to the lands transferred to her under this Decree." We find no provision requiring Nancy to account for money she collects under this provision.

The court awarded Nancy alimony of $200 per month for 121 months and provided it cease upon Nancy's remarriage or death. It also awarded her judgments of $3,000 for attorney fees, $1,500 for "Petitioner's medical/dental expenses," along with $5,000 for the Chevrolet Sierra and $800 for one-half the savings account balance, said sums to be withheld from Dennis' share of the sales proceeds.

## ASSIGNMENTS OF ERROR

Dennis claims the trial court abused its discretion by (1) valuing and dividing the marital estate, (2) liquidating the entire

marital estate, (3) failing to consider the tax consequences of such liquidation, (4) not recognizing his premarital assets, (5) allowing counsel to present ex parte evidence following trial and then entering a revised decree based on that evidence without notice and hearing, and (6) awarding alimony to Nancy.

The fifth assignment of error relates to communication by Nancy's counsel with the judge, with copies to Dennis' counsel. In order for this court to consider the propriety of communication of counsel with the judge, it is necessary for the facts showing that communication to be in the bill of exceptions. The bill of exceptions contains no record of any communication between counsel and the judge. Although communication might be inferred by the copy of a letter attached to the decree and in the transcript, we cannot treat this as evidence. Before an appellate court can consider an issue of fact, evidence must have been offered at the trial court and embodied in the bill of exceptions filed with the appellate court. *Lincoln Lumber Co. v. Fowler*, 248 Neb. 221, 533 N.W.2d 898 (1995). Therefore, we cannot consider the fifth assignment of error. Since we are reversing in part this trial court's decision for other reasons, the effect of the alleged improper communication is probably moot in any case.

## STANDARD OF REVIEW

The division of property and the awarding of alimony are matters entrusted to the discretion of the trial judge and, on appeal, will be reviewed de novo on the record and will be affirmed in the absence of an abuse of the trial judge's discretion. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995). In a de novo review on the record, an appellate court reappraises the evidence as presented by the record and reaches independent conclusions from those of the trial court. *Thiltges, supra.* However, if evidence is in conflict, the appellate court may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Thiltges, supra; Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995).

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether

there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Davidson v. Davidson,* 254 Neb. 656, 578 N.W.2d 848 (1998).

In reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Goff-Hamel v. Obstetricians & Gyns., P.C.*, 256 Neb. 19, 588 N.W.2d 798 (1999).

## ANALYSIS
*Equality of Division of Marital Estate.*

Neb. Rev. Stat. § 42-365 (Reissue 1998) provides in pertinent part: "When dissolution of a marriage is decreed, the court may order . . . division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, [and] a history of the contributions to the marriage by each party . . . ."

The Supreme Court has repeatedly stated that the ultimate test for determining an appropriate division of marital property is one of fairness and reasonableness as determined by the facts in the case. *Thiltges, supra.* The Nebraska Supreme Court has recently stated that where growth of the marital estate cannot be attributed to one party more than to another, the trial court may divide the estate equally. *Shockley v. Shockley,* 251 Neb. 896, 560 N.W.2d 777 (1997). See, also, *Thiltges, supra.*

The decree did not provide for the distribution of a very significant amount of intangible property that the evidence clearly showed to be marital property. We can only speculate why the trial court did not clearly provide for the distribution of the entire marital estate and the determination of issues concerning nonmarital property. However, except where the court withheld certain items it deemed Dennis owed Nancy, the decree orders each party to receive an equal share of the marital estate. We agree with the trial court that the growth of the marital estate cannot be attributed more to one of the parties than the other and that the marital estate should be equally divided. Upon remand, we provide that the decree shall provide for an approximately equal division of the parties' property.

*Complete Sellout Unreasonable.*

Ordering Nancy to sell substantially all of the parties' property involves two issues. The first issue is whether the court should have ordered the sale of all of the parties' property as opposed to a distribution in kind. The second issue is whether the court should have ordered Nancy to be the person to sell that property. The trial court made no finding which would explain its ordering a sale of all the parties' assets. In the case at hand, a forced sale of all of the parties' property seems to be patently unreasonable. We find few Nebraska cases that consider the question of sale of the assets versus distribution in kind. We note that we cannot recall any case where the trial court ordered a sale of substantially all of the parties' property, and we find no cases where one party was authorized to sell the property belonging to the other party.

We find no statute authorizing a court in a dissolution action to order a sale of all the parties' property. Section 42-365 provides in significant part: "When dissolution of a marriage is decreed, the court may order . . . division of property as may be reasonable . . . . The purpose of a property division is to distribute the marital assets equitably between the parties." Neb. Rev. Stat. § 42-366(8) (Reissue 1998) provides in part: "If the parties fail to agree upon a property settlement which the court finds to be conscionable, the court shall order an equitable division of the marital estate."

This court observes that in the many appeals for dissolution we have considered in the past several years, as well as the many reported cases we have read while considering these appeals, Nebraska courts do not generally order sales of marital assets to facilitate distribution. In the few cases where a sale is ordered, the sale was the only practical way to divide the parties' assets. Therefore, a review of the cases involving a sale of the parties' assets will be helpful.

In two cases, the trial court divided the parties' home equally, but provided the wife could have possession of it until the children were raised and then provided it was to be sold and the net proceeds divided, but it did not provide the method of sale. See, *Anderson v. Anderson*, 222 Neb. 212, 382 N.W.2d 620 (1986); *Wade v. Wade*, 183 Neb. 268, 159 N.W.2d 570 (1968). In these

cases, the home was the parties' major asset, and the primary intent was to provide a home for the children and an equal division when that need had passed.

In one case, the claims against the property necessitated that a single asset be sold. In *Frost v. Frost*, 227 Neb. 414, 418 N.W.2d 220 (1988), most of the parties' very substantial assets were divided in kind, but the court ordered that one house that was subject to two mortgages and a significant contribution of nonmarital funds for its purchase be sold and the proceeds distributed to pay the liens and the nonmarital contribution with an equal division of any balance. Both the parties were real estate agents, and they did not contest the order for the sale but disputed only who should bear the loss if the sale price was not sufficient to cover the charges against the property.

In two cases, the evidence on value was insufficient to allow for an in-kind distribution. In *Redmond v. Redmond*, 209 Neb. 745, 311 N.W.2d 517 (1981), the trial court appointed a referee to sell all personal property and divide the net proceeds. The *Redmond* court noted: "The record insufficiently details the personal property and fails to show values." 209 Neb. at 746, 311 N.W.2d at 517. It also noted that counsel gave the trial court very little assistance in the task of evaluating the marital estate.

It appeared that justice required that the wife should receive something from the second marriage, that the husband only had income that would be judgment proof, and that the sale of the personal property was the only place to obtain anything for her. The *Redmond* court affirmed the order of sale but modified it to provide that the referee appointed to sell the property should be required to "itemize the values and determine the encumbrances and report them to the court for further order." *Id.* at 747, 311 N.W.2d at 518.

In *Haase v. Haase*, 210 Neb. 371, 314 N.W.2d 270 (1982), the issue was the division of personal property and debts. The appellant assigned as error the inclusion of certain motor vehicles the appellant brought into the marriage and furniture given to the parties by the appellant's parents. The trial court found the evidence of value and "preference" was insufficient. *Id.* at 371, 314 N.W.2d at 271. The trial court then gave the parties 30 days to enter into an agreement "with respect to the personal

property and debts, reserving to each of the parties their clothing and personal effects." *Id.*

Later, a referee was appointed to sell the property within 90 days. After deductions for the expenses of the sale, court costs, and current debts, the net proceeds were to be divided equally. This order was affirmed but modified to provide that before the property was sold, the referee should be required to itemize the values, determine encumbrances, and report these facts to the court for further order.

The Nebraska Supreme Court has ordered a sale when the trial court's in-kind division would not solve the parties' dispute. In *Burhoop v. Burhoop*, 221 Neb. 657, 380 N.W.2d 254 (1986), the trial court awarded the husband specific items of personal property, including a vehicle and a business; awarded the wife the remainder of the personal property, including a vehicle; and then awarded each party "an undivided one-half interest as a tenant in common in all real estate owned by the parties subject to existing indebtedness" and one-half interest in all contracts for the sale or leases. *Id.* at 659, 380 N.W.2d 256. The trial court did not order the property sold but left the parties each owning one-half interest in 37 acres of real estate, two rental properties, and real estate underlying the husband's former clinic.

The Supreme Court ordered that the real estate should be "sold at public auction for its fair market value under the supervision of the trial court" and that the net proceeds be divided after payment of any indebtedness on the land. *Id.* at 663, 380 N.W.2d at 258. In making that decision, the *Burhoop* court noted that in the proper situation, a trial court does not abuse its discretion by awarding the parties to a dissolution action an undivided one-half interest in property.

However, the *Burhoop* court observed that the trial court did not provide for who was going to collect the rents and maintain the property, that the divorce was an extremely bitter one, that most of the other properties of the parties had been sold, that the remaining property had been listed for sale for many months and had not been sold, and that the husband had sold his veterinary practice and was planning to relocate to another town.

Upon reading that case, it is obvious that to leave the parties as common owners of property is to invite additional litigation.

In *Walker v. Walker*, 193 Neb. 540, 227 N.W.2d 878 (1975), the trial court gave an old, large, mortgaged home that could produce rental income to the husband subject to a life estate in the wife, the idea being the house would furnish her a home and rental income. However, the *Walker* court found the wife did not have the health to manage the home and ordered it sold within 90 days and if the parties could not agree ordered "it be sold at public auction under supervision of the District Court." 193 Neb. at 541, 227 N.W.2d at 879.

In *Parker v. Parker*, 1 Neb. App. 187, 492 N.W.2d 50 (1992), this court reversed an order of sale which provided for the sale of only part of the parties' antiques. The trial court distributed most of the property in kind but found it was unable to establish an equitable division of the antiques, particularly because the parties used some as regular household items. The trial court decreed that " '[t]he remaining articles of personal property, including all household items in the possession of each party not otherwise disposed of herein, shall be sold at auction.' " *Id.* at 189, 492 N.W.2d at 53.

After noting the confusion over which party had possession of the property that would be included in that order, this court found the order for sale was overly broad and probably incapable of effective enforcement, and hence, an abuse of discretion. This court vacated the order of sale and provided that the property be assembled at one place, that the parties alternately select items in rotation from the assembled mass, and that the process be supervised by an attorney selected by the court who was to be paid equally by each party.

In *Anania v. Anania*, 6 Neb. App. 572, 576 N.W.2d 830 (1998), this court addressed the partition of property between former spouses who had engaged in a meretricious relationship many years after the couple divorced. The trial court awarded the woman a lien on a home that was awarded to the man and further provided that if he did not pay the lien, the property should be sold. This court modified that decree to cancel the order of sale, because the judgment lien could be enforced as any other judgment lien.

The above cases were the only cases we have succeeded in locating after considerable searching. The lack of dissolution cases where a sale of assets was ordered is itself an indication of the general hesitancy of at least Nebraska courts to force divorcing people to sell their property.

A search for cases in other jurisdictions and general authority on the subject of the sale of assets versus an in-kind division shows that those who have considered the question do not favor forcing the sale of parties' property. Missouri has a dissolution statute like Nebraska's in that it provides for dividing the marital property. The Missouri courts require that two findings be met before a dissolution court can provide for the sale of marital assets as a means of division: First, the property cannot be divided in kind, and second, a sale would be in the best interest of the parties. *Chambers v. Chambers*, 910 S.W.2d 780 (Mo. App. 1995); *Parker v. Parker*, 744 S.W.2d 469 (Mo. App. 1987); *Swinford v. Swinford*, 682 S.W.2d 189 (Mo. App. 1984). See, also, 27B C.J.S. *Divorce* § 530 (1986).

An Arizona court held that the divorce courts of that state have the discretionary power to order the sale of marital property when it will facilitate the equitable division of the property and that the only inherent limitation on that power is that the division neither rewards nor punishes either party. *Lee v. Lee*, 133 Ariz. 118, 649 P.2d 997 (Ariz. App. 1982).

After studying the above cases from both Nebraska and other states, we conclude a court in a dissolution action may provide for the sale of all or part of the parties' assets in lieu of dividing them, if to do so is reasonable in the light of the facts, the circumstances of the parties, and the nature of their property. Such action, of course, must be within the statutory dictate that the division of the assets be reasonable, having regard for the circumstances of the parties as provided in § 42-365, and that it satisfy the ultimate test of fairness and reasonableness articulated by case law. See *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995).

In this case, the parties clearly elected to live on a farm and make their living by farming. When they cut the size of their operation, they continued to live on the farm, to keep cattle, to keep considerable machinery, to rent land, and to sublet

it to others. Even after the separation, Dennis continued to work in his chosen vocation, agriculture, either on a farm or for an implement dealer. When Dennis and Nancy lived together, they continued to own the land, and until Nancy changed her mind during the hearing, no evidence indicates that they desired to sell the land. In an agrarian state such as Nebraska, people who are associated with agriculture generally regard the continued ownership of land as very important. It is not reasonable for a court in a dissolution action to unnecessarily interfere with the respective desires of the parties and their way of life.

Generally, when courts force parties to sell their assets, such as in a partition action or a foreclosure action, the parties may protect themselves by being a bidder at the public auction. In this case, the trial court ordered that Dennis "shall not have any personal involvement in, input into, or control over the sales." That provision coupled with the lack of a requirement that the property be sold at public auction effectively prohibited Dennis, but not Nancy, from buying the property. To force the sale of a farmer's, or other small business person's, property with no chance for that person to buy it is unreasonable, even when the circumstances justify a sale.

Courts must be aware of the general effect of income tax laws. Improvements on the land and farm machinery depreciate for income tax purposes. The taxable income is realized upon the sale of such depreciable property. For this reason, it would be foolish to sell all the land, machinery, and equipment without good reason. In this case, the decree demonstrates that the trial judge was clearly aware that the sale he was ordering would generate considerable income tax liability. For a court to force one or both parties to incur substantial income tax liability by a forced sale is unreasonable, unless the sale is necessary to accomplish a reasonable and necessary division.

We point out that the evidence on the value of the property is extensive. The evidence gave the age and condition of most of the machinery. The case is clearly distinguished from *Redmond v. Redmond*, 209 Neb. 745, 311 N.W.2d 517 (1981), or *Haase v. Haase*, 210 Neb. 371, 314 N.W.2d 270 (1982), where the sale seems to have been ordered because the evidence would not support a finding of the value of the property. It is true that it

would take a conscientious fact finder some time to determine the fair market value of so much property, especially in view of the considerable evidence on the subject. As compared to some cases, the evidence of the parties was well organized, and a decision on the fair market value of the property would have been comparatively easier than in some cases. We think it is an expected function of the court to determine and to organize the values for in-kind distribution unless other facts dictate a sale.

Dennis introduced an exhibit listing the 80 acres of land and most, if not all, the cattle, machinery, and other farm property at the values placed on it by Nancy's witnesses and asked that this property be distributed to him at those values. In this situation, most judges would conclude that to allow Dennis to have the property he wants at the price Nancy wants would be both fair and reasonable. We cannot understand why Dennis was not allowed to take the property at those values. We are too removed in time from the evidence to consider that simple solution at this point in time.

Dennis did not assign the appointment of Nancy as seller of the property as an error. We consider this issue under the plain error doctrine. Plain error may be noted by an appellate court on its own motion. *In re Estate of Morse*, 248 Neb. 896, 540 N.W.2d 131 (1995). Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Id.*; *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994); *Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 472 N.W.2d 372 (1991).

In this case, the order of sale gives Nancy the broad general right to sell everything or to keep it herself. We find no case where a court authorized one party to sell the property owned in part by an opposing party. In *Frost v. Frost*, 227 Neb. 414, 418 N.W.2d 220 (1988); *Anderson v. Anderson*, 222 Neb. 212, 382 N.W.2d 620 (1986); and *Wade v. Wade*, 183 Neb. 268, 159 N.W.2d 570 (1968), the parties were generally ordered to sell the house sometime in the future. In these cases, no provision

specified who would sell the property. In *Redmond, supra,* and *Haase, supra,* the trial court appointed a referee to sell the property, and the Nebraska Supreme Court modified the order by requiring the referee to investigate and to report for further orders before the sale.

In *Burhoop v. Burhoop,* 221 Neb. 657, 380 N.W.2d 254 (1986), and *Walker v. Walker,* 193 Neb. 540, 227 N.W.2d 878 (1975), where the Nebraska Supreme Court initiated the order of sale, it also ordered the sale to be under the supervision of the court. We note the court did not authorize either party to sell the common property of the parties.

In the case at hand, the trial court authorized Nancy to sell the property without court supervision. Her only obligations are to pay half the net proceeds to the clerk of the district court and file an accounting.

In the two cases where the district court ordered the sale, *Redmond, supra,* and *Haase, supra,* the person appointed to sell the property was called a referee. We note that in those cases, the Supreme Court modified the trial court's order to provide that the referee should investigate and report to the court before sale. This provision is in accord with the partition statutes, Neb. Rev. Stat. §§ 25-2170 through 25-21,111 (Reissue 1995). Of course, those statutes give a statutory preference for a division in kind. See § 25-2181. We are not implying a divorce court, a court of equity, is limited to the partition statutes in dividing property, but these statutes do contain a time-tried procedure.

In *Burhoop, supra,* and *Walker, supra,* the Supreme Court determined a sale was necessary and simply ordered a sale by public auction under the supervision of the trial court. The court did not designate a name for the officer who would sell it. The name, of course, is of very little importance. Anyone who would be selling property under the direction of a divorce court would be disposing of the property according to the decree. That is one of the functions of a receiver under our statutes. See Neb. Rev. Stat. § 25-1081 (Reissue 1995).

Interestingly, the receiver statutes provide that no person shall be appointed a receiver who is a party, solicitor, or in any manner interested in the suit. See Neb. Rev. Stat. § 25-1086 (Reissue 1995). That provision would seem to be a sound rule,

whatever the name of the person appointed by a court to perform a function for the court. After all, when the law clearly provides that an attorney, an officer of the court, cannot have even the appearance of a conflict of interest, courts should not appoint a layperson with an obvious conflict to perform a function for the court.

It has long been held:

> The power vested in the district court to exercise judicial discretion in handling a judicial sale is inherent in a court of equity, and of which it may not be deprived by the Legislature, and we hold that the language so appearing in the section of the statute is ineffective to take from the district court the inherent power to exercise sound judicial discretion in tax-foreclosure sales, as in the instant case.

*County of Nance v. Thomas*, 146 Neb. 640, 646, 20 N.W.2d 925, 928 (1945).

■ The general power of a court to order the sale of the parties' property is usually referred to as a "judicial sale." A judicial sale is defined as "one made under the process of a court having competent authority to order it, by a person legally appointed and commissioned to sell, and which is subject to confirmation by the court." 50A C.J.S. *Judicial Sales* § 2 at 7 (1997). Judicial sales have a well-established procedure in common law. See, generally, 50A C.J.S., *supra*. Sometimes the person appointed to conduct a judicial sale is called a commissioner. 50A C.J.S., *supra*, § 12 d.

■ In a judicial sale, a court should not appoint a person to sell real estate when that person is interested in the suit or the property. 50A C.J.S., *supra*, § 12 b. The purchaser may not be the officer conducting the sale. 50A C.J.S., *supra*, § 15; *Stettnische v. Lamb*, 18 Neb. 619, 26 N.W. 374 (1886). Of course, there are many commonsense provisions developed over time to protect litigants when a court forced them to sell their property. See 50A C.J.S., *supra*. These cases give no indication that the Nebraska Supreme Court should do away with the established procedure simply because the sale might be conducted in a divorce case, especially since divorce cases are frequently the most bitter of family disputes.

In *Burhoop v. Burhoop*, 221 Neb. 657, 380 N.W.2d 254 (1986), and *Walker v. Walker*, 193 Neb. 540, 227 N.W.2d 878 (1975), the Supreme Court provided for the sale of the property under the supervision of the trial court. In the case at hand, the court provided for no supervision, no list of the property to be sold, and no provision for confirmation. We can find no authority for a court to simply authorize one party to sell common property, and we think the possibilities of abuse are so obvious and numerous to not need recounting. The trial court clearly abused its discretion in appointing and authorizing Nancy to purchase it herself or to sell the common property, especially since Nancy could sell it privately without confirmation by the court.

We find the record is too stale for this court to attempt an in-kind distribution. The trial ended on October 16, 1997, the court did not enter a decree until March 19, 1998, and this opinion cannot possibly be published until April 1999. In the meantime, while this appeal is pending, Nancy may well have sold some or all the property. Furthermore, the decree does not consider the accounting issues raised by the parties at trial concerning the adequacy of Dennis' accounting for the property he sold or the property the evidence shows one or the other of them took and kept. The disposition of most of the intangible property is left to guesswork. It appears that both parties will need to account for the rents collected on the land and for property they came into possession of since the decree.

We conclude the only fair and reasonable method of correcting the several errors is to affirm the dissolution of the marriage, to provide that the parties' marital property shall be divided substantially equally, to determine certain other clearly framed issues, and then to remand the cause. The trial court with directions shall allow the parties to update the evidence on the existence, location, and value of the parties' property still remaining.

The evidence shall include the net due from both parties after an accounting for property either party might have come into contact with or disposed of, and then, the district court shall reasonably distribute that property in kind, if that can reasonably be done, at values that are fair and reasonable. The court shall consider the fairness and the reasonableness in the light of the

evidence on value and the use by either party of the particular property since the original decree.

However, to the extent that the facts at the time of the hearing on remand show the property, or some part of it, cannot be fairly and reasonably divided in kind, the court shall order it sold under the supervision of the court and the proceeds divided. In making the division, the trial court shall take into account our determination of the following separate issues.

*Premarital Property.*

During the marriage, Nancy received two gifts of $500 each. However, she testified that the savings accounts that she acquired as a result of these gifts are in First Federal and the Union Bank, and the court treated these items as nonmarital property by not listing them as part of the distribution. We determine this property to be nonmarital property.

Dennis had $9,000 in equity in the 40 acres and a life insurance policy with a cash value of a little over $6,000 when the parties married. After their marriage, he obtained ownership of life insurance policies from his father, which also had cash value. Dennis and Nancy purchased other policies during the marriage, and Dennis testified he thinks those policies had a several-thousand-dollar total cash value. Nancy's summary shows the value of his policies at $20,756 and another, presumably the one purchased during the marriage, at $6,896.

We found no evidence on the cash value of the insurance policies at the time Dennis' father gave them to him. Except for the $6,000 cash value at the time of their marriage, it is likely that the premiums were paid with marital funds which would have increased the value of the life insurance. The burden of proof to show that the property is nonmarital is on the person making the claim. *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997); *Frost v. Frost*, 227 Neb. 414, 418 N.W.2d 220 (1988). Dennis did not meet that burden in determining the value for the insurance. Therefore, only $6,000 of the cash value of the insurance policies should be treated as nonmarital property.

The court awarded Dennis all the life insurance owned by him. We interpret that to mean all insurance on his life or owned

by him which would include the policies valued in evidence at $27,652. Dennis should be allowed a deduction of $15,000 from the value of the property distributed to him for the $6,000 cash value insurance Dennis brought into the marriage and the $9,000 he paid for the land before the marriage.

*Miscellaneous Judgments.*

The court ordered Dennis to pay Nancy $5,000 through the clerk of the district court "for the Chevrolet Sierra purchase." The evidence shows the Sierra had a fair market value of $10,000, and therefore, the payment of $5,000 to Nancy for the vehicle would not be out of line, except for the fact that no similar provision was made in Dennis' favor for the $3,000 automobile it appears Nancy received. We cancel the $5,000 provision but note that the value of the Chevrolet Sierra should be treated as property distributed to him, as the $3,000 value of the Buick Nancy received should be treated as a distribution to her. In addition, the court awarded Nancy an $800 judgment for Nancy's interest in the $1,640 savings account balance he took. We also cancel that judgment but realize the trial court will consider the $1,640 as a distribution to Dennis, the same as it should treat the remainder of the "taking" by both Dennis and Nancy.

*Accounting by Dennis.*

The court ordered that within 60 days, Dennis shall pay and obtain proof of payment of all rental expenses and shall pay Nancy one-half of all "traceable rental income still in his possession." The court ordered him to "be responsible for the debt to his landlord in the sum of $3,750." This provision apparently refers to one of the two annual payments required to be paid on the lease on the land, perhaps the rent payment due November 1997. We conclude this order is an inadequate resolution of the issues involving Dennis' need to account, and therefore, this order must be canceled and that item be handled as part of the accounting upon remand.

*Alimony.*

The trial court awarded Nancy alimony of $200 a month for 121 months or until such time as Nancy remarries or

dies. Dennis argues that the statutes and case law do not provide for alimony in a situation such as this case. Both parties quoted the provision concerning alimony in § 42-365. The statute determines whether alimony should be awarded, in what amount, and over what period of time. The ultimate criterion is one of reasonableness. *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988); *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982). The awarding of alimony is a matter entrusted to the discretion of the trial judge, and on appeal, the award will be reviewed de novo on the record and will be affirmed in the absence of an abuse of the trial judge's discretion. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995).

"In determining whether alimony should be awarded, the trial court should consider what effect, if any, the marriage has had upon the ability of the wife to secure employment in the future and the earning capacity of the husband. . . . Alimony is not to be used simply to equalize the income of the parties or to punish one of the parties. It may be used to assist the other party during a reasonable time to bridge that period of unavailability for employment or for that period to get proper training for employment."

*Preston,* 241 Neb. at 194, 486 N.W.2d at 911.

The evidence shows both parties have a high school education, but no greater. It does not show that either of them desired to seek more education or training. The record indicates that before their marriage, Nancy worked as a secretary and as a waitress. The record fails to indicate that Nancy had expectations of a particularly rewarding career monetarily in either endeavor. The evidence shows that for one reason or another, the parties choose to live on a farm and make their living by farming.

At one time, the parties farmed 1,000 acres and kept a herd of cattle. Such evidence as we have shows both parties were hard working, and judging from the property they accumulated, they were successful for many years. Sadly, like it has to so many farmers so many times in this state's history, farming became unprofitable for them when they were too young to retire, but too old to seek a completely new occupation.

Apparently, the parties were wise enough to cut back before it was too late. At least, they retain considerable wealth.

Dennis indicated that he wishes to continue to farm while working part time. Nancy argues he would have more earnings and, therefore, be better able to pay her alimony if he worked full time. He cannot be criticized for attempting to continue his traditional way of life. The evidence demonstrates that off the farm, he can be a farm laborer or a "jack-of-all-trades" at a local implement business. She has chosen to return to being a waitress. All are basic-skills jobs. However, neither side suggests either one of them will be able to find more lucrative employment. If Dennis worked full time at his current job at Virgl, he could make more wages than Nancy, but as the above authority states, alimony is not to be used to equalize the parties' income.

In Nancy's brief, her counsel recites the long history of her hard work, caring for the family, and working on the farm, whereas counsel argues Dennis "had a sketchy work background at best." Brief for appellee at 15. No evidence establishes that fact, and no court should attempt to judge whether a man or a woman "worked harder" as farmers during a 23-year marriage.

Nancy testified that for 10 to 12 years she has suffered from low-back pain as a result of having fallen off a hayrack and that doing such things as riding a horse or lifting causes her pain. She admitted that she has been able to work 40 hours per week as a waitress. She presented no evidence to prove that the marriage caused her current physical condition or that prognosis of the abnormal condition she claims will affect her earning potential.

We can find no reason that would justify alimony for Nancy. Accordingly, we determine that the trial court abused its discretion in awarding alimony of $200 per month for 121 months to her and direct that the judgment for alimony be vacated.

## CONCLUSION

We note that the trial court ordered Dennis to pay $1,500 toward Nancy's medical and dental expenses, awarded Nancy $3,000 in attorney fees, and ordered Dennis to pay all court costs, including deposition costs. These matters were not assigned as error, and we do not modify these provisions.

We affirm the dissolution and the award contained in the previous paragraph, but we modify the decree of dissolution as provided in this opinion and reverse the judgment and remand the cause to the district court for further hearing and disposition in accordance with this opinion.

AFFIRMED IN PART AS MODIFIED, AND IN PART
REVERSED AND REMANDED WITH DIRECTIONS.

SIEVERS, Judge, concurring.

I agree wholeheartedly with Judge Hannon's opinion, the essence of which is that the trial court's decision suffers from two significant fatal flaws: (1) an incomplete resolution of the issues before the court and (2) a completely unjustified, and thereby abusive, order which "sells out" the parties' property in a manner which potentially works to Nancy's advantage. Thus, the matter must be remanded.

That said, I want to ensure that my position is clear that there are times and circumstances when it is appropriate, and indeed reasonable, for a trial court to direct one party to a divorce action to dispose of, by sale or otherwise, an asset of the parties and then deliver a share of those proceeds to the other. I view those situations as having the effect of a constructive trust with the disposing party being a fiduciary with a duty of good faith and fair dealing. Consequently, I do not believe that a neutral third party needs to always become involved in the disposition of marital assets. At the core, the matter remains a question of reasonableness, and as Judge Hannon has thoroughly set forth in his opinion, the notion of a sellout with Nancy in charge is flawed on many levels and patently unreasonable. But, in addressing an obviously flawed decree, we should not sweep too broadly as to limit the power of the district courts to fashion reasonable, efficient, and inexpensive methods for the disposition of marital property.

IRWIN, Chief Judge, joins in this concurrence.