IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KILLINGER V. KILLINGER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ELIZABETH KILLINGER, APPELLEE,

V.

JUSTIN KILLINGER, APPELLANT.


Filed December 17, 2019.    No. A-19-088.


Appeal from the District Court for Howard County: KARIN L. NOAKES, Judge. Affirmed.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellant.

Susan M. Koenig, of Mayer, Burns & Koenig, for appellee.


MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

The District Court of Howard County entered a decree dissolving the marriage of Justin Killinger and Elizabeth Killinger. Justin appealed, assigning error to the court's distribution and valuation of the parties' assets and to the child support award. For the following reasons, we affirm.

## BACKGROUND

Justin and Elizabeth were married on August 5, 2006, and two children were born to the parties in 2012 and 2015. The parties separated in October 2016 and Elizabeth filed a dissolution action in January 2017. A trial was held on November 13, 2018. There were three primary disputed issues at trial: distribution of Just-In-Feeds, L.L.C., a business the parties owned together; valuation of cash that was kept in a gun safe on the business property; and child support.

- 1 -

*Distribution of Just-In-Feeds.*

Justin and Elizabeth were the sole members of a limited liability company, Just-In-Feeds. The company consisted of a feed store that sold bulk livestock feed and a small line of seed for growing crops. Justin and Elizabeth started the business in 2009 and reorganized the company into a limited liability company in 2014. Justin and Elizabeth each owned 50 percent of the interest in the company.

During the course of the divorce proceedings, the parties mutually agreed to hire Veritas Professional Group, L.L.C., to perform a valuation of the business. The parties agreed to have the business valued as of January 31, 2017. The calculation procedures were performed to determine the fair value of an equity interest in the business for the purpose of calculating an equitable distribution in the divorce. Using an Adjusted Net Assets Method, Veritas determined that the value of Just-In-Feeds was $335,500. This valuation was conducted in conformity with the Valuation Standards of the National Association of Certified Valuators and Analysts.

Elizabeth did not want the district court to assign the business to her because she was already working another full-time job. Justin testified that he also did not want the district court to assign the business to him as he would be unable to afford the resulting equalization judgment. Justin testified that Just-In-Feeds had existing debts and the maximum loan amount he could obtain from his bank was $40,000. Justin also believed he could not obtain the necessary credit to continue to operate the business. Justin asked that the business be sold and the proceeds divided between the parties.

The district court distributed Just-In-Feeds to Justin. In order to equalize the division of assets and debts between the parties, the court entered an equalization judgment against Justin in the amount of $139,891. Under the decree, Justin is to make annual installment payments toward the judgment of $14,000, with interest.

*Cash in Gun Safe.*

The parties also disputed the value of cash that was located in a gun safe located in the office of Just-In-Feeds. Based upon her view of the money in the safe, Elizabeth believed that there was a total of $40,000 in the gun safe. According to Elizabeth, the cash was gathered in stacks and there was handwritten numbers on the stacks of bills that she believed to represent the value of the bills in each stack. She did not count the bills in the safe independently. Elizabeth stated that she did not know whether the cash in the safe was property of the business or was marital property. However, Elizabeth testified that she believed the cash was from a paint can where the couple had previously kept cash in the house during the marriage.

Justin agreed that there was cash in the gun safe at Just-In-Feeds, but testified that it belonged to the business from customers paying with cash. Justin believed that there was approximately $10,000 in the safe. The valuation of the business by Veritas did not include any cash as an asset of the business.

The district court did not make a specific finding regarding the amount of cash in the gun safe at the Just-In-Feeds store. However, the court attributed a total value of $375,500 to the business, which was $40,000 more than the valuation determined by Veritas.

*Child Support.*

Justin and Elizabeth have two minor children. The parties agreed on a parenting plan providing for the parties to have joint legal custody, with Elizabeth having sole physical custody, and establishing parenting time with the children.

Justin testified that his sole source of income was Just-In-Feeds. According to Justin's testimony and tax documents from various years, income from Just-In-Feeds varied year to year depending on the price of commodities. For example, in 2011, the company showed a net profit of $13,125. In 2012, the company showed a net profit of $20,636. In 2013, the company showed a profit of $34,373. In 2014, when Just-In-Feeds was organized into a limited liability company, it had net profit of $45,634 and Justin's K-1 form showed self-employment earnings of $28,865. For 2015, the company's net profit was $54,374 and Justin's K-1 form showed self-employment earnings of $40,419. For 2016, the company's net profit was $82,423 and Justin's K-1 form showed self-employment earnings of $70,496. Lastly, in 2017, the business income on the parties' joint Schedule E was $35,211, and Justin's K-1 reported $17,606 of self-employment income. Justin testified that 2016 was an unusually good year, but that an average from 2011 through 2017 would give an accurate picture of his earnings.

Elizabeth was employed by the University of Nebraska extension in Grand Island, Nebraska. Elizabeth was paid $5,349 gross per month. Through her employer, Elizabeth provides health insurance for the parties' minor children at a cost of $76 per month in addition to the $169 per month Elizabeth pays for her individual coverage. Prior to the separation, Elizabeth also participated in Just-In-Feeds by working at the store on weekends or days off and preparing the tax documents.

The district court ultimately used an average of the last 3 years of income earned by the business in determining Justin's child support obligation. The district court used the total business income for Just-In-Feeds (rather than Justin's share), because Justin was awarded all interest in the business and would be the one receiving all future distributions. The court set forth the business income figures as: $35,211, $47,488, and $82,423, for a total of $165,122 (divided by 3 = $55,040 average annual income). Based on this income, together with Elizabeth's current income, Justin was ordered to pay $980 per month in child support when there are two children subject to the order, and $694 per month when there was only one child subject to the order.

## ASSIGNMENTS OF ERROR

Reordered, Justin assigns that the district court erred by abusing its discretion in (1) assigning Just-In-Feeds to Justin and entering an equalization judgment against him, (2) finding that the value of the cash located at Just-In-Feeds was $40,000, and (3) requiring Justin to pay child support in the amount of $980.00 per month.

## *STANDARD OF REVIEW*

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; however, these determinations are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Dooling v. Dooling*, 303 Neb.

494, 930 N.W.2d 481 (2019). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

ANALYSIS

*Distribution of Just-In-Feeds.*

The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Rohde v. Rohde*, 303 Neb. 85, 927 N.W.2d 37 (2019). Under Neb. Rev. Stat. § 42-365 (Reissue 2016), the equitable division of property is a three-step process. The first step is to classify the parties' property as marital or nonmarital, and setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to value the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Rohde, supra*. As a general rule, a spouse should be awarded one-third to one-half of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

A court in a dissolution action may provide for the sale of all or part of the parties' assets in lieu of dividing them, if to do so is reasonable in the light of the facts, the circumstances of the parties, and the nature of their property. *Thiltges v. Thiltges*, 247 Neb. 371, 527 N.W.2d 853 (1995); *Kellner v. Kellner*, 8 Neb. App. 316, 593 N.W.2d 1 (1999). Such action, of course, must be within the statutory dictate that the division of the assets be reasonable, having regard for the circumstances of the parties as provided in § 42-365, and that it satisfy the ultimate test of fairness and reasonableness articulated by case law. *Kellner, supra*.

Justin argues that the court should have ordered the sale of Just-In-Feeds, with the proceeds from the sale distributed to the parties. Despite Justin's desire to sell the business, there is no evidence that any effort was made to locate a buyer. In its valuation report, Veritas determined the fair value of an equity interest in the business. The report indicated that the term "fair value" applicable to a divorce valuation is defined as "the amount that will fairly compensate an owner who was involuntarily deprived of the benefit of an asset where there is neither a willing buyer nor a willing seller." Justin also argues that the district court's order placed him in a position where he could not operate the business due to "inability to obtain the necessary credit and simultaneously having a large judgment against him," which he argues would be inequitable and unfair. We disagree. The debts of the business were taken into consideration in the valuation by Veritas. Further, the district court gave Justin a fairly significant amount of time to pay the judgment, at the rate of $14,000 per year, plus interest.

Under the facts and circumstances in this case, we cannot say that it was unreasonable to decline to order the sale of the business. Selling the company would eliminate Justin's sole source of income, especially where the record does not show that he has made efforts to look for other work. Justin, as the sole owner of the business going forward, could sell the business if he determines that to be the best course of action.

The district court did not abuse its discretion in assigning Just-In-Feeds to Justin instead of forcing a sale of the company.

*Valuation of Cash in Gun Safe.*

An appellate court's review of a trial court's judgment in dissolution proceedings is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Huffman v. Huffman*, 232 Neb. 742, 441 N.W.2d 899 (1999); *Catlett v. Catlett*, 23 Neb. App. 136, 869 N.W.2d 368 (2015). While the court did not make a separate finding in the decree regarding the valuation of the cash in the gun safe, the court included an additional $40,000 in its valuation of the Just-in-Feeds business.

The parties disagreed on the amount of money in the gun safe; Elizabeth testified that there was around $40,000 in cash, whereas Justin claimed that there was only around $10,000 in cash. While both parties were not completely sure on the amount, Justin's valuation was based on "just a guess." Although Elizabeth admitted she did not count the bills herself, she did have an explanation for how she arrived at the amount. The district court clearly accepted Elizabeth's version of the facts over Justin's.

Although the evidence is conflicting, we cannot say that the district court abused its discretion in valuing the cash in the gun safe at $40,000.

*Child Support.*

The Nebraska Supreme Court has concluded that it is generally customary for Nebraska courts to use a 3-year average to calculate a parent's income to determine child support when the parent's annual income fluctuates. *See Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007). In *Gress*, the court considered the number of years a court should use when averaging an income pursuant to the Nebraska Child Support Guidelines. The court concluded that "both here and elsewhere, a 3-year average tends to be the most common approach in cases where a parent's income tends to fluctuate. Second, even among the jurisdictions which permit an average of more than 3 years, courts appear reluctant to use more than a 5-year average." *Gress, supra*.

Justin argued that the district court abused its discretion and reached an untenable result by using a 3-year average to calculate his income, rather than a 7-year average of income from 2011 to 2017. Specifically, Justin argues that a 3-year average that included income from 2016, a large outlier, dramatically increased the calculation of his income.

Even where it is possible for a district court to calculate a more accurate assessment by including more years of income for a child support calculation, the Nebraska Supreme Court has held that it is not an abuse of discretion for a court to use a 3-year average. *Gress, supra*. Here, the district court's use of a 3-year average was not so clearly untenable that it deprives Justin of a substantial right or denies him a just result.

The district court did not abuse its discretion in using a 3-year average to calculate Justin's income for the purposes of child support calculation. However, it appears that the district court

incorrectly calculated the 3-year average. In our review of the record, the first figure used by the court, $35,211, is the business income reported on the parties' joint Schedule E for 2017. The third figure, $82,423, is the 2016 net income figure set forth in the income summary contained in the business valuation. This "Statement of Income Summary" prepared by Veritas contains a summary of the income, deductions, and net income for Just-In-Feeds from 2012 through 2016. The second figure in the court's summary, $47,488, is actually an average of the 2012-16 net income on this income summary. If the district court's intention was to use the most recent 3-year average, it appears that it should have used the 2015 net income, which according to the income summary was $54,374. Using these figures, the 3-year average income was $57,336.

Although we have noted the error in the district court's calculations, using the accurate numbers amounts to only a slight change in the 3-year average income for Justin; from $55,040 to $57,336. Since neither party complained of this error, and a correction would amount to only a small change to the ultimate child support determination, we decline to note any plain error. See *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014) (plain error exists where there is error, plainly evident from record but not complained of at trial, that prejudicially affects substantial right of litigant and is of such nature that to leave it uncorrected would cause miscarriage of justice or result in damage to integrity, reputation, and fairness of judicial process).

## CONCLUSION

We conclude that the district court did not abuse its discretion in assigning Just-In-Feeds to Justin, valuing the cash in the gun safe at $40,000, or using a 3-year average of the business income to determine Justin's child support obligation. We affirm the decree in its entirety.

AFFIRMED.